# Scibilia, Appellant, *v.* Philadelphia.

*Negligence—Municipalities—Governmental and public duties—Private and corporate duties—Respondeat superior—Removal of ashes—Exemption of municipality from liability of agents for negligence.*

1. The implied common law liability or nonliability of municipality for the torts of its servants depends upon the character of service they were performing at the time of the injury. If they were acting for the city in its corporate or business capacity, the municipality may be held liable; but if they were performing duties of a public or governmental character, there is an immunity from municipal liability.

2. The public-private test for ascertaining a city's liability for its servants' torts must not be confused with the rule which, in certain instances, makes a municipality liable for failure to perform

an absolute duty, and not liable for the omission to exercise a discretionary power.

3. Even though a municipality is required to render a particular service to the public, it will not be liable for injuries inflicted by its servants in the performance of that duty, if the service is of a governmental character delegated to the municipality to be performed in behalf of the sovereign state.

4. Marked exceptions to the rule, as in highway, public works and nuisance cases, do not affect this rule.

5. The case of public health is a subject-matter of general concern, and how it shall be accomplished, is a public question.

6. When the legislature leaves the accomplishment of public health to any degree in the hands of the several municipalities, they act as governmental agencies, and not as business corporations in the performance of the power placed at their disposal or the duty thus put upon them, whichever it may be, and the rule of respondeat superior does not then apply to them.

7. The gathering and disposal of refuse and ashes is primarily a health measure, and hence a public or governmental measure within the police power.

8. If a municipality in the performance of its public duty of collecting refuse and ashes, injures through its employees, an individual, the municipality is not liable for the injuries sustained.

9. The fact that some small incidental revenue may be derived from the collecting and disposing of the refuse does not have the effect of changing the duty of such collection from a purely public to a corporate or business function.

10. Nor does the fact that the municipality may let out the work to be done by others, or that, in the past, it has let out such work, or that it may divide the city into districts, and do the work itself in some districts, and let it out in others, change the material character of the public duty involved, and render it corporate or business in character, so far as the municipality is concerned.

11. The letting of an independent contract to perform the physical work necessary to carry on a governmental function is not, technically, the delegation of the function.

Argued February 5, 1924. Appeal, No. 312, Jan. T., 1924, by plaintiff, from judgment of Superior Court, Oct. T., 1923, No. 292, reversing judgment of C. P. No. 1, Phila. Co., June T., 1921, No. 449, on verdict for plaintiff in case of Guiseppe Scibilia v. City of Philadelphia. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, SADLER and SCHAFFER, JJ. Affirmed.

Appeal from judgment of Superior Court: 82 Pa. Superior Ct. 328.

The opinion of the Supreme Court states the facts.

Judgment of common pleas reversed. Plaintiff appealed.

*Error assigned* was, inter alia, judgment, quoting it.

*John J. McDevitt, Jr.,* for appellant.—The city was not engaged in a governmental function in removing ashes: Pittsburgh v. Grier, 22 Pa. 54; Briegel v. Phila., 135 Pa. 451; Morgan v. Duquesne Boro., 29 Pa. Superior Ct. 100; Armstrong v. Phila., 249 Pa. 39; Fox v. Phila., 208 Pa. 127; Bodge v. Phila., 167 Pa. 492.

Appellee has heretofore erroneously taken the position that the revenue producing test was conclusive. We contend that while it is not, nevertheless the act of assembly under discussion shows clearly that the particular department was revenue producing; that this is also shown by the reports of the mayor of the city filed in pursuance of the said act of assembly and therefore public records; and that both that fact and the "advantage" to the city were matters of such common knowledge, that the court would take judicial notice thereof if necessary: Rauch v. Com., 78 Pa. 490; Sandy Lake Boro. v. Gas Co., 16 Pa. Superior Ct. 234.

*Harry S. Platowsky,* with him *Bernard J. O'Connell,* Assistant City Solicitor, and *Joseph P. Gaffney,* City Solicitor, for appellee.—The City of Philadelphia in cleaning and sprinkling its streets and collecting its ashes and refuse is performing a purely governmental function, and therefore is exempted from liability for the negligence of its employees while in the performance of such work: Lentz v. Phila., 3 Pa. C. C. R. 136; Howard v. Phila., 250 Pa. 184; Com. v. Beatty, 15 Pa. Superior Ct. 5; Com. v. Bredin, 165 Pa. 224; Bodge v. Phila., 167 Pa. 492.

It is not the character or name of the agent who exercises the duty of removing the cause of discomfort and ill health to the public which fixes the character of the duty performed, but it is the act itself which determines whether it be governmental or ministerial.

OPINION BY MR. CHIEF JUSTICE MOSCHZISKER, March 10, 1924:

In compliance with the spirit of rule 56 of this court, counsel "substituted for the notes of testimony" an agreed statement of facts, which shows that, on May 4, 1921, plaintiff, Guiseppe Scibilia, while standing at the side of a street in Philadelphia, was injured by "an automobile truck, the property of the city,......loaded with ashes, and operated by one of the employees of the Bureau of Street Cleaning of the Department of Public Works," the vehicle being engaged at the time in conveying the ashes from a "centralization plant" of the municipality to one of its dumps. Plaintiff alleged negligence on part of the driver of the truck, who, in reply, claimed that Scibilia's injuries were due to his own carelessness; but since the verdict was against defendant, its negligence and plaintiff's lack of fault in that regard must be assumed on this appeal. Finally, the statement of agreed facts shows that "no evidence was produced by plaintiff that the bureau......entrusted with the cleaning of streets derived any income or revenue......from the performance of this work."

The trial court entered judgment on the verdict, defendant appealed and the Superior Court gave judgment in its favor; the present appeal by plaintiff followed.

The facts before us present the question of the implied common-law liability of a municipality for the negligence of its servants. In seeking to determine the existence of this liability under any particular circumstance, we must consider the distinction between the governmental and the private acts of the corporation involved and decide as to the capacity it occupied at the time of the

negligence alleged (Dillon, Municipal Corporations, 5th ed., section 109), for the decisions on the subject draw a distinction between the acts of municipalities done in their corporate character, or business capacity, and those which they perform as functions of government, delegated by the State to its agencies as public instrumentalities. Regarding the first, the municipality may be held liable for the acts of its representatives or employees, while, as to the second, there is generally an immunity from liability, based on grounds of public policy: Moore v. Luzerne County, 262 Pa. 216, 222; Cousins v. Butler County, 73 Pa. Superior Ct. 86. Here, appellant contends the negligence of which he complains did not occur in the course of the discharge by the city of one of its public or governmental functions, but rather in the discharge of a corporate function of a nongovernmental character; that is to say, the duty being performed was of a kind which rendered the municipality liable for the negligence of its employees.

In deciding that, at the time of the accident, the City of Philadelphia was performing a purely public function, to which the rule of respondeat superior did not apply, the court whose judgment is now under review correctly stated that the true test went to the nature of the duty the municipality was then engaged in carrying out, the controlling question being, Was it "corporate and managerial, or public and governmental"? and this without regard to whether the duty was "absolute," "imperative," or "ministerial," as distinguished from "legislative," "judicial," or "discretionary," which is a test sometimes applied.

The test last mentioned may or may not properly have been given controlling efficacy in the cases where liability was enforced on the ground that the act investigated occurred through the omission to perform, or in the improper or negligent performance of, an imperative duty, as distinguished from a discretionary power; but, be that as it may, it is not the correct standard

whereby to judge the question of liability in the present case. Therefore, as said in the opinion of the Superior Court (Scibilia v. Phila., 82 Pa. Superior Ct. 328), it is unnecessary to decide whether plaintiff was injured by defendant in the course of the discharge of a discretionary power or otherwise. However, since certain cases on the subject in hand contain discussion which might suggest relevancy to the facts in the present suit, and this discussion at times serves to obscure, rather than to clarify, the law on the rule which relieves a municipality from liability for negligence when its action falls within the terms "legislative," "judicial" and "discretionary," as distinguished from "absolute," "imperative," or "ministerial," and since a clear conception of the meaning of these terms and of the field where that rule applies is indispensable to a proper understanding of the cases on the subject, we pause to make the following observations: It has been properly held that the rule in question finds application, (1) where plaintiff alleges the injury he complains of might have been averted by the exercise of an authority granted to the municipality which it failed to use (McDade v. Chester City, 117 Pa. 414), (2) where he contends such injury was caused by the municipality acting in pursuance of a plan which it faultily devised (Fair v. Phila., 88 Pa. 309); and in other kindred cases. So far as our research discloses, the notes in 30 American States Reports 376, and 66 American Decisions 434, throw more light on the rule and the discussions contained in the cases relating to it than may be found elsewhere; but, to avoid confusion in reading the cases, it should be kept in mind that the words "absolute," "imperative" and "ministerial," as used in the rule, denote a definite duty, performance of which can be demanded of officials empowered to act, and the neglect or omission to perform such a duty is treated in the law as a basis of liability where the obligation attaches to the city in its corporate, or private, capacity: Dillon, Municipal Corporation, 5th

ed., section 1645. Finally, in certain established instances, failure to comply with a duty of like imperative nature may also create a liability when a municipality acts in its public capacity, for example, in connection with the building or construction of highways or public works, or their repair (Allentown v. Kramer, 73 Pa. 406, 409); but, to date, these examples, and instances of nuisances on, or improper use of, governmentally owned real estate (Briegel v. Phila., 135 Pa. 451), seem to mark the limit of municipal responsibility in respect to the exercise of public or governmental duties, so far as our decisions are concerned (see Elliott v. Phila., 75 Pa. 347, 349), though some of the language of this court in times past might indicate that the liability extends further. As already stated, the rules discussed in this paragraph have no controlling place in the case now under review; and, we may add, even if they had, their application, within the restricted scope of our decisions,—meaning to the extent they have actually heretofore been given controlling force,—would not change the result here reached.

As to the line of decisions already mentioned, where recovery of damages was allowed for injuries growing out of the negligent construction or maintenance of highways, since in some of these cases the courts have said that the governmental agencies were liable, and the rule of respondeat superior applied, because such negligence represented a breach of an imperative duty expressly imposed by the State on the municipalities, we must also notice that in several of our opinions we have taken occasion to point out that the decisions, fixing municipalities with responsibility for damages in this particular kind of case, are in a class by themselves, depending more on long established precedent than on fixed rules or pure logic: see Ford v. School District, 121 Pa. 543, 549; Briegel v. Phila., 135 Pa. 451, 458; Hubbard v. Crawford County, 221 Pa. 438, 439. As suggested by Judge KELLER in Cousins v. Butler County, 73 Pa. Superior Ct.

86, 94, the explanation of the highway cases may more probably be found in historic reasons than in general rules, or by the process of legal or logical deduction therefrom. This is quite possibly correct, for, when the latter methods are pursued, it will be seen that if a breach of duty imposed be accepted as the sole or controlling criterion by which to judge questions of liability in cases of negligence toward others on the part of municipal employees, then, since, so far as legislative mandates are concerned, the duty to organize and maintain police and fire service is just as mandatory on cities (at least on those of the first class) as to construct and maintain highways, such a breach could as well give rise to the right to sue for damages growing out of the negligence of the police or firemen as of employees in charge of, or working on, the construction or repair of highways: yet it has repeatedly been held that, except where a right to recover is expressly given by act of assembly, no suit lies against municipalities for negligence of their police or fire departments: Elliott v. Phila., 75 Pa. 347; Knight v. Phila., 15 W. N. C. 307. The ground of these latter decisions is that, even though a city is required to render a particular service to the public, it will not be liable for injuries inflicted in the performance of that duty if the service was of a governmental character, delegated to the city to be performed on behalf of the sovereign state: see Thompson on Negligence, vol. 5, sections 5833, 5836. Marked exceptions to this rule, such as the highway, public works and nuisance cases, do not affect the general principle: Haley v. Boston, 191 Mass. 291, 77 N. E. 888.

Aside from the exceptional instances already noticed, where municipalities, though acting in a governmental capacity, have been held liable for the negligence of their employees, and those where recovery was allowed because the State, in placing on its governmental agencies the duty in question, indicated an intention that such agencies should be responsible for injuries growing out

of its negligent performance, the cases of liability are generally explainable on the ground that the damages alleged occurred through the performance by the municipality of a business function rather than one of a purely public nature; and, in many of the latter class, to prove the duty involved was a corporate, as distinguished from a governmental function, evidence was introduced showing that the particular arm of the public service whose operation caused the injury in controversy was one which derived, and was intended to derive, a business revenue from the performance of the duty in which it was engaged at the time of the accident. Where the authority exercised or thing done is on the border line between the private and the governmental capacities in which municipalities may act, and has features suggestive of both, charges made for, and commercial income derived from, the rendition of the services involved have been given decisive influence as elements which determine the case to be of a kind where damages for injuries may be recovered, and the absence of these elements has been allowed force the other way. Here, however, no evidence of income received from the activity under consideration appears, and even though it be considered, for the purpose of deciding the present appeal, that some small incidental revenue may be derived through the disposal of refuse gathered by the municipality, this would not have the effect of changing the duty, of collecting and disposing of such refuse, from a purely public to a corporate, or business, function.

The city, in the present instance, was engaged at the time of the accident in gratuitously rendering service of "a public character, for a high order of public benefit," to which service, had it been undertaken by an independent association organized for public charity, the rule of respondeat superior would not have applied, and this, because of the character of the work involved (Fire Ins. Patrol v. Boyd, 120 Pa. 624, 646-7); when performing gratuitously—in the sense that, for the work

in question, it makes no charge, and, through it, earns no revenue which, equitably, should meet claims for its negligent performance—service of a character to come within the broad legal meaning of the term "charitable" (see Fire Ins. Patrol v. Boyd, supra, 644, where "cleansing streets" is particularly mentioned as within that meaning), a municipality is entitled to the benefit of the same rule of exemption that would apply to work of a similar kind when rendered by a public charity. In other words, it is the character of the service involved which must serve as the criterion to govern controversies such as the one at bar.

The care of public health is undoubtedly a subject-matter of general concern, and how it shall be accomplished is a public question. When the legislature leaves its accomplishment to any degree in the hands of the several municipalities, they act as governmental agencies, and not as business corporations, in the performance of the power placed at their disposal or of the duty thus put on them, whichever it may be. That cleanliness makes for health must be accepted as a truism; and that the regular, systematic gathering by municipalities of refuse, including ashes, and the proper, orderly and efficient disposal thereof promotes cleanliness, is apparent. Such gathering and disposal of refuse is primarily a health measure, the duty to perform which might have been placed on the health department; the fact that it was put elsewhere makes it none the less a health measure, and, hence, a public or governmental function within the police power: Howard v. Phila., 250 Pa. 184, 188. Those engaged in taking care of the public health, albeit appointed by a municipality, are quasi civil officers of the government. The point under immediate discussion is covered by McQuillan, Municipal Corporations (Supplement), vol. 8, section 2625, p. 8229, thus: "The liability or nonliability of a municipality for its torts......depends upon the capacity in which the city was acting at the time......A

municipal corporation is not responsible for the negligent acts of its employees who are endeavoring to carry out the regulations of the city to promote the public health......It is not the character or name of the agent who executes the duty of removing the cause of discomfort and ill health to the public which fixes the character of the duty performed, but it is the act itself which determines whether it is governmental or ministerial." This last statement is made with reference to the removal of street sweepings, and the text then goes on to state that, in such matters, "undoubtedly the city acts for the public health and discharges a governmental function," saying further that, "In this regard it is an agent or arm of the Commonwealth, and for that reason is absolved from liability for the negligence of its employees."

The fact that in earlier times the duty of gathering and disposing of refuse was not assumed by, or put on, the public authorities, does not help one way or another in solving the question whether, to-day, the gratuitous performance of such a function by a great city represents the carrying out of a purely public obligation or of a private undertaking. Thus, the fighting of fires in large cities was not, until comparatively recent years, treated as a matter for direct governmental control, but its status as a public function is now well settled. While the police power of the State rests on established principles, the propriety of its application to particular circumstances, and whether, in any particular instance, the acts of a public agency may be held to fall within it, depend largely on the conditions existing at the time, and attempts at the statement of general rules to control or guide the judiciary in determining these questions have in the past proved rather futile, as may be seen by an examination of the authorities cited by counsel in the case before us. Here, however, we agree with the Superior Court that, when the city Charter Act of June 25, 1919, P. L. 581, by section 5 of article XX, empowered cities of the first class to clean the streets, including the

gathering of ashes, and indicated that this work should be done directly by the municipalities themselves (unless in any instance the councils determined by a majority vote otherwise), the legislature had in mind things to be performed for the benefit of all the people rather than for the profit or advantage of the municipal corporation affected; and the City of Philadelphia paying for this character of work out of the general taxes, as it does, and deriving no commercial income therefrom, must be treated in its accomplishment as performing a public function; though it must be admitted that in these days, when governments are constantly assuming new duties for themselves and putting additional powers at the disposal of their agencies, the demarcation between what are purely public functions within the police power and what are not, is becoming increasingly difficult to observe. It may be that, when providing for the exercise of authority which is on the border line between the two, and perhaps in other instances, the legislature ought expressly to make the municipalities liable for damages where negligence in the exercise of, or in the omission to exercise, the powers in question causes injuries to others; but, in the absence of such definite legislation, the courts must, in each instance, consider the essential nature of the act being performed at the time of the injury, and classify it as best they may, in view of existing legislation relevant to the situation, applicable general principles, and the nearest pertinent authorities. After so considering the case before us, we cannot hold the decision of the Superior Court,—that the duties being performed by defendant municipality at the time of the present accident were of a public or governmental character, as to which the rule of respondeat superior does not apply,—lacks support in principle, is contrary to Pennsylvania law or authority, or is unsustained by the consensus of opinion in other jurisdictions.

So far as shown by reported cases, the decisions of the United States Supreme Court, and of the courts of

ultimate appeal in the majority of states where analogous questions have been passed on, favor the view here sustained, that the removal of ashes or refuse by a municipality is a governmental function, designed primarily to promote the public health and comfort, and no recovery can be had for negligence in its performance: Harris v. Dist. of Columbia, 256 U. S. 650, 41 Sup. Ct. Rep. 610; Love v. Atlanta, 95 Ga. 129, 22 S. E. 29; Louisville v. Carter, 142 Ky. 443, 134 S. W. 468; Haley v. Boston, 191 Mass. 291, 77 N. E. 888; Cassidy v. St. Joseph, 247 Mo. 197, 152 S. W. 306; James v. Charlotte, 183 N. C. 630, 112 S. E. 423; Condict v. Jersey City, 46 N. J. L. 157; Bruhnke v. LaCrosse, 155 Wis. 485, 144 N. W. 1100; note in 14 A. L. R. 1473.

The two Pennsylvania authorities which counsel for appellant cites as being, "on their facts, most analogous to the case at bar," are Bodge v. Phila., 167 Pa. 492, and Fox v. Phila., 208 Pa. 127. Judgment was sustained in the first of these solely on the ground that the municipal bureau, whose employees caused the damage of which plaintiff complained, was, in its revenue producing capacity, similar to the purely business departments of the city, and, therefore, the rule of liability for the acts of employees of business corporations, rather than of governmental agencies, applied. The questions discussed in the second case do not appear to have included the point as to whether, in conducting the building known as the City Hall, in Philadelphia, the municipality was performing a governmental function or carrying on a business undertaking; that it was doing the latter seems to have been assumed, probably on the ground that, since, in this structure, owned by the municipality, are housed not only the local courts and the purely governmental departments of the city, but also the revenue producing and purely business departments of the latter, the structure should be considered as any other business or office building. Obviously, neither of these decisions governs here; though, as asserted by counsel for appellant, they

are, on the facts involved, as near to the present case as any of the Pennsylvania authorities cited by either side. This being so, further discussion of those authorities would serve no useful purpose; it is sufficient to say of them that the numerous excerpts from the opinions relied on by counsel for both parties must be read in connection with the facts to which they severally apply, and their significance measured accordingly; none of the Pennsylvania decisions controls the case before us.

As to the cases from other jurisdictions called to our attention by appellant, Denver v. Maurer, 47 Colo. 209, 106 Pac. 875, was a suit by one who fell over a hose with which city employees were flushing a sewer; the ground of action was a failure to keep the street in a reasonably safe condition, and it was on this basis the court permitted a recovery. The case on which plaintiff chiefly relies is Missano v. New York City, 160 N. Y. 123, 54 N. E. 744, where recovery against the city was allowed; but a divided court, and a strong dissenting opinion, serve to weaken it materially as an authority. The Illinois District Appellate Division Case of Flannagan v. Bloomington, 156 Ill. App. 162, is, in essence, an instance of the use of real property by a municipality to the injury of like property of another,—a nuisance case. So far as the views followed by the courts of ultimate appeal in both Texas (Ostrom v. San Antonio, 94 Tex. 523, 62 S. W. 909) and Mississippi (City of Pass Christian v. Fernandez, 100 Miss. 76, 56 So. 329) are concerned, suffice it to say, we do not agree with them.

In conclusion, we are not impressed by appellant's contention that, because the Act of 1919 authorizes the city to clean the streets by letting contracts for the work, this shows the legislature did not consider such service as purely governmental, inasmuch as functions of that character cannot be delegated. The answer to this is, that the letting of an independent contract to perform the physical work necessary to carry on a governmental function is not, technically, the delegation of the func-

tion.   Nor are we impressed by appellant's argument that, since, under the Act of 1919, the municipality may divide the city, letting contracts for street cleaning in some of the districts while performing this work directly in others, and since, under that system, a person injured could recover for negligence against the contractor in the first set of districts, it follows he ought to be allowed a like right against the city when the latter performs the work itself.   In the first place, the municipality here involved is cleaning all its territory by the direct method; and, next, if the dual system were pursued, the fact that the rule of respondeat superior would not apply to the city in the one instance and might to the independent contractor in the other, has no legal significance when the idea of a delegation of power from the former to the latter is eliminated.   So far as the evils of inconsistency, referred to by appellant, are concerned, each set of workers, public and private, would remain subject to the rules of law usually applicable to them; and this would result in no greater inconsistency than is always bound to exist so long as the rule continues that government agencies, when engaged in work of a purely public character, are not responsible for the negligence of their servants, albeit, if the things gratuitously performed by the public were done for hire by an individual or by a business corporation, he or it would be so liable.   Sacrifices, even of consistency, must be made at times in order to maintain organized society.   If, however, established rules seem, in their application, to bring about unjust inconsistencies, or to bear hard in many cases, it is for the legislature to consider the advisability of either changing or controlling them; and, as previously said, in view of the manifold activities now being assumed by the State and exercised through its agencies, the lawmakers might well consider whether provision should not be made for putting on the public liability for negligence of its servants when work of a certain character, theretofore performed by others, is taken over for direct

execution by the people in their aggregate or governmental capacity.   But whether this shall be done, and the extent to which it shall be done, are legislative rather than judicial problems, for they involve questions of public policy of an economic nature, and under our system of law these belong peculiarly to the legislature.

The assignments of error are overruled and the judgment of the Superior Court is affirmed.