Argued October 17; affirmed December 23, 1930

## MILLER *v.* CITY OF WOODBURN

(294 P. 349)

*W. Lair Thompson* of Portland and *W. C. Winslow* of Salem for appellant.

*Allan G. Carson* of Salem and *Blaine McCord* of Woodburn (Carson, Carson and Carson and Blaine McCord on the brief) for respondent.

BELT, J. This is a suit to enjoin the defendant city of Woodburn from emptying sewage into a small sluggish creek or slough which flows through the land of plaintiff. Aside from the alleged pollution of the creek,

plaintiff complains that its natural flow was materially increased to his damage. The controversy has been slowly and tediously working its way through the courts for years and, no doubt, has become vexatious to all parties concerned. In February, 1924, plaintiff commenced an action at law to recover damages against the city for interference with his rights as a riparian owner. Soon thereafter the city instituted a condemnation proceeding to acquire the right thus to use the stream, alleging that the damage sustained by plaintiff was not in excess of $10. The city, however, failed to prosecute such action and plaintiff was obliged to proceed with his action for damages which finally terminated in a verdict and judgment in favor of the city. Upon appeal the judgment was reversed on account of erroneous instructions and the case remanded for a new trial: *Miller v. City of Woodburn,* 126 Or. 621 (270 P. 781). While the law action was pending, the present suit was instituted, in August, 1925, for injunctive relief. The action for damages was never retried. In the present suit the trial court, after a view of the premises and the taking of additional testimony, in October, 1929, finally decreed that plaintiff was not entitled to enjoin the city and, therefore, dismissed his suit. Hence this appeal.

The city of Woodburn has a population of approximately 1,800 people. It obtains its water from three wells which are pumped to a storage tank having a capacity of 60,000 gallons. There are three units of the sewer system—the first of which was constructed in 1910. Individual septic tanks are used and, near the outlet of each main trunk sewer, there is a large septic tank into which the sewage passes before it is emptied into one of the tributaries of Ferrier creek which

flows through plaintiff's premises. In addition to the septic tanks, the city had constructed at the time of the commencement of this suit two filtration beds which materially added to the sewage disposal system. These filtration beds were constructed in accordance with the plans and specifications provided by the State Board of Health. It appears from the record that the sewage from the greater number of the homes is disposed of by individual septic tanks which have no connection with the city sewer system. The stream also affords drainage for numerous barnyards, a large cannery, a slaughter-house and cemetery, which unquestionably would tend to pollute the water independently of any sewage which was emptied into the creek by the city.

The property in controversy—which has been owned by the plaintiff since 1874—is located along Ferrier creek about two miles north of the city of Woodburn. Plaintiff refers to it as beaver dam land, but we think it may be more accurately described as swamp land. It has never been under cultivation, but is covered with a dense growth of underbrush partly submerged by water. There is no dwelling house or any other kind of building on it. It may be stated, however, that if the land were properly drained and reclaimed, it would be particularly adapted for garden truck purposes.

Plaintiff claims that this land, which witnesses variously estimated comprised from twenty to fifty acres, is capable of being reclaimed and put in a high state of cultivation, but that he cannot do so by reason of the increased flow of water caused by the act of the defendant city. He also contends that the sewage of the city has rendered the water unfit for human consumption or domestic purposes. On the other hand the city asserts that the small amount of water which it

empties into Ferrier creek has not materially injured or affected the property of the plaintiff. Furthermore, it contends that the stream is less contaminated since the city constructed its sewer system than it was prior thereto when many people were accustomed to empty raw sewage and garbage into it. The testimony of the numerous witnesses is greatly at variance concerning the volume of water coming from the sewer outlets, and also as to the effect thereof on the property of the plaintiff. We will state our conclusions rather than undertake even to give a summary of the evidence.

▮ As we view the case, there are no intricate questions of law involved. A city has no more right to commit a public nuisance than has an individual. Neither has a municipal corporation the right to increase the natural flow of a stream or to pollute its waters to the material injury of a riparian owner. Such is the law as declared by this court on former appeal, and it is controlling here (126 Or. 621, 270 P. 781). Also see *Harbison v. Hillsboro,* 103 Or. 257 (204 P. 613), and *Ulmen v. Town of Mt. Angel,* 57 Or. 547 (112 P. 529, 36 L. R. A. (N. S.) 140). The question with which we are now particularly concerned is one of fact. Has it been established by clear and convincing proof that plaintiff has sustained a substantial injury?

▮ After a careful consideration of the evidence, we are convinced that plaintiff's grievance is more fanciful than real. His testimony is so colored with bias and prejudices against the city that it has but little weight. His unfounded accusation that the "city hirelings" had killed beaver on his land for commercial purposes causes us to view with caution other portions of his testimony. It is quite evident that the water in Ferrier creek is unfit for human consumption and, no

doubt, always has been since plaintiff acquired his property. It is, perhaps, less polluted now than it was before the city began paying attention to the disposal of sewage. Other owners whose land is located between the property of plaintiff and the city have testified positively that they have sustained no damage and that the increase in the flow of water by reason of acts of the city is of no consequence. Mr. Overton, a witness for defendant, observed, in the dry season of the year, the volume of water flowing below the sewer outlets and found it was only four inches wide and two and one-half inches deep. This measurement was at a point about one and one-half miles from the northern boundary line of plaintiff's land. R. D. Cooper, a civil engineer, made a more accurate measurement by a standard water weir. He testified, on behalf of the plaintiff, that the water flowing over the weir was approximately one foot in width and 15/100 feet in depth. In view of the distance of the sewer outlets from plaintiff's property, the small amount of water flowing therefrom, and the sluggishness of the creek which had a fall of five feet to the mile, it is, in our opinion, speculative and uncertain as to whether plaintiff sustained any substantial damage. The jury in the law action, after a view of the premises, found for the city. The trial judge, who is thoroughly familiar with the topography of the country in and about Woodburn, also viewed the premises. It was his conclusion that plaintiff had not been damaged. Under such circumstances, we are reluctant to grant the extraordinary equitable relief sought by plaintiff. He who would thus enjoin a city, where public convenience is materially involved, should be required to show that the matter complained of is of more than trivial consequence, and that he has a strong right to relief.

Plaintiff relies much upon the case of *Ulmen v. Town of Mt. Angel,* supra, but we think the facts upon which that decision was based are substantially different from the one at bar. In the Ulmen case, the plaintiff was a resident of the town of Mt. Angel and it was clearly shown that the sewage was emptied at a point very near to the property involved, which, no doubt, substantially interfered with the use and enjoyment of his property. Sewage from the city even affected the water in the well which was used by the plaintiff therein. Each case must be decided upon its own particular state of facts.

The decree of the lower court dismissing the suit is affirmed.

ROSSMAN, BEAN and BROWN, JJ., concur.