# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

## VIOLA HOGGARD V. CITY OF RICHMOND, VIRGINIA.

January 9, 1939.

Record No. 2004.

Present, All the Justices.

The opinion states the case.

*M. Haley Shelton* and *Thomas I. Talley*, for the plaintiff in error.

*Horace H. Edwards* and *John P. McGuire, Jr.*, for the defendant in error.

HUDGINS, J., delivered the opinion of the court.

This is an action to recover $5,000, alleged to be due plaintiff for injuries sustained when her left hand struck a barbed-wire fence while bathing in Shield's Lake, a swimming pool owned and operated by the city of Richmond. In the first count of the notice of motion, defendant is charged with non-feasance—that is, negligence in maintaining the resort. In the second count, defendant is charged with misfeasance in erecting a barbed-wire fence above and under the waters of the lake, thereby creating a dangerous place to which plaintiff and other inhabitants of the city were invited. The trial court sustained the city's demurrer to the motion, on the ground that the city "in maintaining and operating the bathing and swimming resort, known as Shield's Lake, was engaged in the exercise of a governmental function."

The question of plaintiff's contributory negligence is negatived in her notice of motion. Hence the single question presented is whether the municipality is liable for negligence in the maintenance of a bathing resort, or negligence in erecting an unsafe and dangerous instrumentality at a place designated for the use of bathers and swimmers.

The general law, as interpreted by the courts in all but two states (South Carolina and Florida), is that a municipality is clothed with two-fold functions; one governmental, and the other private or proprietary. In the performance of a governmental function, the municipality acts as an agency of the state to enable it to better govern that portion of its people residing within its corporate limits. To this end there is delegated to, or imposed upon, a municipality, by the charter of its creation, powers and duties to be performed exclusively for the public. In the exercise of these governmental powers a municipal corporation is held to be exempt from liability for its failure to exercise them, and for the exercise of them in a negligent or improper manner. This immunity is based on the theory that the sovereign can not be sued without its consent, and that a designated agency of the sovereign is likewise immune.

■ There are granted to a municipal corporation, in its corporate and proprietary character, privileges and powers to be exercised for its private advantage. In the performance of these duties the general public may derive a common benefit, but they are granted and assumed primarily for the benefit of the corporation. For an injury resulting from negligence in their exercise or performance, the municipality is liable in a civil action for damages in the same manner as an individual or private corporation. For Virginia and West Virgina cases, see 7 Michie's Digest 571 and 2 Va. L. Reg. (N. S.) 36. See also, 43 C. J., p. 920, et seq., and 19 R. C. L., p. 1109.

While this distinction is generally recognized, the difficulty arises in the application of the rule to various municipal activities.

This court has held that a municipal corporation acts in its governmental capacity in operating a hospital (*City of Richmond* v. *Long's Adm'rs*, 17 Gratt. (58 Va.) 375, 94 Am. Dec. 461) ; in regulating the use of sidewalks and streets (*Terry* v. *City of Richmond*, 94 Va. 537, 27 S. E. 429, 38 L. R. A. 834; *Jones* v. *City of Williamsburg*, 97 Va. 722, 34 S. E. 883, 47 L. R. A. 294) ; in maintaining a jail (*Franklin* v. *Richlands*, 161 Va. 156, 170 S. E. 718) ; and in maintaining a police force (*Burch* v. *Hardwicke*, 30 Gratt. (71 Va.) 24, 33, 34, 32 Am. Rep. 640; *Lambert* v. *Barrett*, 115 Va. 136, 140, 78 S. E. 586, Ann. Cas. 1914D, 1226; *City of Winchester* v. *Redmond*, 93 Va. 711, 716, 25 S. E. 1001, 57 Am. St. Rep. 822).

In *Maia's Adm'r* v. *Eastern State Hospital*, 97 Va. 507, 34 S. E. 617, 618, 47 L. R. A. 577, it was held that the Eastern State Hospital was a public corporation, governed and controlled by the state, and acted exclusively as an agency of the state for the protection of society, and for the promotion of the best interests of the unfortunate citizens, hence it was not liable in damages for personal injuries inflicted on one of its inmates in consequence of the negligence or misconduct of the persons administering the powers, or their agents or employees.

Judge Buchanan, in delivering the opinion, referred to *City of Richmond* v. *Long's Adm'r, supra,* and said [page 618]: "In that case the distinction was drawn between powers and duties which are granted to or imposed upon a public body as an agency of government to be exercised and performed exclusively for public, governmental purposes, and those powers and privileges which are exercised by the corporation or body for its own private advantage, and are for public purposes in no other sense than that the public derives a common benefit from a proper discharge of the duties arising from the grant."

In the case of *Ashbury* v. *Norfolk,* 152 Va. 278, 147 S. E. 223, 224, it was held that a municipality, in removing garbage, acted in a governmental capacity. Judge Prentis, speaking for the court, said: "There is some conflict in the cases, but the weight of authority quite certainly is to the effect that the removal of garbage by a municipality is a governmental function, which is designed primarily to promote public health and comfort, and hence that the municipality is not liable therefor in tort when the negligence which is charged occurred in the performance of that particular function, and no nuisance is thereby created."

In *City of Lynchburg* v. *Peters,* 156 Va. 40, 157 S. E. 769, 772, Justice Holt said: "The city, in the establishment of this park and playground, was acting in its governmental capacity and committed no legal wrong. It does not contend that it has the right to convert this lawful undertaking into a center of disorder and so it is not necessary for us to follow the doctrine of municipal immunity in governmental undertakings further."

The following are a few of the cases in which this court held that a municipal corporation, while engaged in the construction, repair, improvement or maintenance of its streets and sidewalks, in the operation of a wharf, in changing the grade of its street level, and in controlling surface water, acts in a private or proprietary capacity, and is liable to the individual for injuries resulting from the negligence of its officers or servants employed in the activities enumerated:

*City of Petersburg* v. *Applegarth's Adm'r,* 28 Gratt. (69 Va.) 321, 26 Am. Rep. 357; *Noble* v. *City of Richmond,* 31 Gratt. (72 Va.) 271, 280, 31 Am. Rep. 726; *Smith* v. *City Council of Alexandria,* 33 Gratt. (74 Va.) 208, 36 Am. Rep. 788; *Orme and wife* v. *City of Richmond,* 79 Va. 86; *Stearns* v. *City of Richmond,* 88 Va. 992, 14 S. E. 847, 29 Am. St. Rep. 758; *Jones' Adm'r* v. *City of Richmond,* 118 Va. 612, 88 S. E. 82; *City of Radford* v. *Calhoun,* 165 Va. 24, 181 S. E. 345, 100 A. L. R. 1378; *Richmond Bridge Corp.* v. *Priddy,* 167 Va. 114, 187 S. E. 518; *Tyler* v. *Richmond,* 168 Va. 308, 191 S. E. 625.

The same rule applies to the activity of a municipality in conducting public utilities, such as water, sewerage systems, gas, light, etc. *Chalkley* v. *City of Richmond,* 88 Va. 402, 14 S. E. 339, 29 Am. St. Rep. 730; *Richmond* v. *Warehouse Corp.,* 148 Va. 60, 138 S. E. 503, 54 A. L. R. 1485, and *City of Richmond* v. *James,* 170 Va. 553, 197 S. E. 416, 116 A. L. R. 967.

This general line of demarcation between immunity and liability of a municipal corporation for torts has been followed with more or less consistency in this jurisdiction for more than a century. Judge Prentis, in the case of *Ashbury* v. *Norfolk, supra,* realized the difficulty in applying the general rule to specific facts, and deciding whether the specific activity was governmental or proprietary. He quoted Chief Justice Rugg, in *Bolster* v. *City of Lawrence,* 225 Mass. 387, 390, 114 N. E. 722, L. R. A. 1917B, 1285, as follows: "The difficulty lies not in the statement of the governing principles of law, but in their application to particular facts. The underlying test is whether the act is for the common good of all without the element of special corporate benefit, or pecuniary profit. If it is, there is no liability, if it is not, there may be liability. That it may be undertaken voluntarily not under compulsion of statute is not of consequence."

Near the conclusion of the opinion, Judge Prentis said: "In a modern instance (*Scibilia* v. *Philadelphia, supra* [279 Pa. 549, 124 A. 273, 32 A. L. R. 981]), it has been sug-

gested that, as local governments are so constantly assuming or being vested with new duties, the distinction between purely public functions which are certainly within the police power, and those private business enterprises which are not, is becoming increasingly difficult to maintain. This may be true, but if so it is doubtless because of our bad habit of counting cases instead of adhering to fundamental rules."

Notwithstanding the reference to fundamental rules, the decision of this court in that case was in direct conflict with the following statement of Judge Cardwell in *Portsmouth* v. *Lee*, 112 Va. 419, 71 S. E. 630, 632: "It is to be borne in mind that it is as much the duty of a municipal corporation to take due and proper precautions for the health and welfare of its citizens as it is to keep its streets and all parts of them in reasonably safe condition for public travel, and the principles of law fixing the liability or non-liability of the city in damages, where an injury on the streets is sued for, and where the suit is for neglect of duty in the protection of health and general welfare, are the same and apply alike in both cases."

These quotations from the opinions delivered or prepared by two members of this court, show the inconsistency of the application of the rule, and illustrate the difficulty of basing the distinction of the two functions on any logical reasoning. The same inconsistent and illogical holding of courts from other jurisdictions is apparent from a study of the cases. See *Autrey* v. *City Council of Augusta,* 33 Ga. App. 757, 127 S. E. 796; *Hodgins* v. *Bay City,* 156 Mich. 687, 121 N. W. 274, 132 Am. St. Rep. 546; *Pleasants* v. *City of Greensboro,* 192 N. C. 820, 135 S. E. 321; *McLeod* v. *Duluth,* 174 Minn. 184, 218 N. W. 892, 60 A. L. R. 96; *Byrnes* v. *City of Jackson,* 140 Miss. 656, 105 So. 861, 42 A. L. R. 254; *Scibilia* v. *Philadelphia,* 279 Pa. 549, 124 A. 273, 32 A. L. R. 981; *City of Mangum* v. *Brownlee,* 181 Okl. 515, 75 P. (2d) 174; *Stevens* v. *Pittsburgh,* 329 Pa. 496, 198 A. 655; *Warden* v. *Grafton,* 99 W. Va. 249, 128 S. E. 375, 42 A. L. R. 259; *Hagerman* v. *Seattle,* 189 Wash. 694, 66 P. (2d) 1152, 110 A. L. R. 1110, and note; *Allas* v. *Rumson,* 115 N. J. L. 593,

181 A. 175, 102 A. L. R. 648, and note; and *Emmons* v. *Virginia,* 152 Minn. 295, 188 N. W. 561, 29 A. L. R. 860, and note.

The Connecticut court, in 1927, held that the city of Waterbury was acting in a governmental capacity in maintaining a swimming pool, and hence the city was not liable for negligence in maintaining a locker room at the pool. *Hannon* v. *Waterbury,* 106 Conn. 13, 136 A. 876, 57 A. L. R. 402. The same court, some four years later, in *Hoffman* v. *City of Bristol,* 113 Conn. 386, 155 A. 499, 75 A. L. R. 1191, held that the city of Bristol was guilty of maintaining a nuisance in that it erected a diving board four feet above the surface of the water which was only three feet deep at that point, and that the city was liable to plaintiff, who was injured in diving off the board into shallow water. See *Johnston* v. *City of Galva,* 316 Ill. 598, 147 N. E. 453, 38 A. L. R. 1384, and *Miller* v. *City of Woodburn,* 134 Ore. 536, 294 P. 349. Sometimes recovery under the nuisance doctrine is restricted to property damage to the exclusion of liability for personal injuries. *City of Louisville* v. *Hehemann,* 161 Ky. 523, 171 S. W. 165, L. R. A. 1915C, 747; *Hines* v. *Rocky Mount,* 162 N. C. 409, 78 S. E. 510, L. R. A. 1915C, 751, Ann. Cas. 1915A, 132. But see *Virovatz* v. *City of Cudahy,* 211 Wis. 357, 247 N. W. 341.

South Carolina recognized the confusion in its own jurisdiction and the confusion in other jurisdictions, and finally held that a municipality, in the absence of statute, was not liable for tort in any event. *Irvine* v. *Town of Greenwood,* 89 S. C. 511, 72 S. E. 228, 36 L. R. A. (N. S.) 363.

In *Fowler* v. *City of Cleveland,* 100 Ohio St. 158, 126 N. E. 72, 9 A. L. R. 131, the Ohio court held that the doctrine of *respondeat superior* applied to a municipality, even though the injury was committed by the negligent operation of a fire truck. However, the doctrine therein announced was repudiated, and the old doctrine of immunity was reinstated in the case of *Aldrich* v. *City of Youngstown,* 106 Ohio St. 342, 140 N. E. 164, 27 A. L. R. 1497; but not,

however, without a vigorous dissent from Judge Wanamaker, who participated in both decisions.

The Florida court, in *Kaufman* v. *Tallahassee,* 84 Fla. 634, 94 So. 697, 30 A. L. R. 471, adopted the principles stated by the Ohio court in the *Fowler Case,* and still adheres to these principles. See *City of Tallahassee* v. *Kaufman,* 87 Fla. 119, 100 So. 150; *City of West Palm Beach* v. *Grimmett,* 102 Fla. 680, 136 So. 320, 137 So. 385; and *Wolfe* v. *Miami,* 103 Fla. 774, 134 So. 539, 137 So. 892.

The same inconsistency seems to exist in Georgia. Compare *City of Macon* v. ·*Roy,* 34 Ga. App. 603, 130 S. E. 700, with *City of Warrenton* v. *Smith,* 149 Ga. 567, 101 S. E. 681.

The A. L. R. annotator, in 75 A. L. R. 1196, among other criticisms, said: "It is almost incredible that in this modern age of comparative sociological enlightenment, and in a republic, the medieval absolutism supposed to be implicit in the maxim, 'the King can do no wrong,' should exempt the various branches of the government from liability for their torts, and that the entire burden of damage resulting from the wrongful acts of the government should be imposed upon the single individual who suffers the injury, rather than distributed among the entire community constituting the government, where it could be borne without hardship upon any individual, and where it justly belongs.

" * * * . The doctrine has been severely criticized by recent writers, and the courts have frequently been revolted by the hardships resulting therefrom in individual cases, and have introduced 'fictions, artificial distinctions and concessions to expediency,' in order to avoid the full rigor of the 'legal anachronism canonized as a legal maxim.' "

Mr. Justice Butler, speaking for the Supreme Court of the United States, in *Trenton* v. *New Jersey,* 262 U. S. 182, 43 S. Ct. 534, 538, 67 L. Ed. 937, 29 A. L. R. 1471, said: "The distinction between the municipality as an agent of the state for governmental purposes and as an organization to care for local needs in a private or proprietary capacity has been applied in various branches of the law of municipal corporations. The most numerous illustrations are found in

cases involving the question of liability for negligent acts or omissions of its officers and agents. See *Harris* v. *District of Columbia,* 256 U. S. 650, 41 S. Ct. 610, 65 L. Ed. 1146, 14 A. L. R. 1471, and cases cited. It has been held that municipalities are not liable for such acts and omissions in the exercise of the police power, or in the performance of such municipal faculties as the erection and maintenance of a city hall and courthouse, the protection of the city's inhabitants against disease and unsanitary conditions, the care of the sick, the operation of fire departments, the inspection of steam boilers, the promotion of education and the administration of public charities. On the other hand, they have been held liable when such acts or omissions occur in the exercise of the power to build and maintain bridges, streets and highways, and waterworks, construct sewers, collect refuse and care for the dump where it is deposited. Recovery is denied where the act or omission occurs in the exercise of what are deemed to be governmental powers, and is permitted if it occurs in a proprietary capacity. The basis of the distinction is difficult to state, and there is no established rule for the determination of what belongs to the one or the other class. It originated with the courts. Generally it is applied to escape difficulties, in order that injustice may not result from the recognition of technical defenses based upon the governmental character of such corporations."

Nothing so promotes public health as a supply of pure water for domestic use to all citizens. The same, to a more limited extent, may be said of water furnished by the city for the purpose of public swimming and bathing. This form of recreation strengthens the body and promotes health and happiness, especially of the youth of the municipality. The expense of owning and maintaining a municipal water system or a public swimming pool is borne by the community group. A different method may be adopted in collecting the necessary funds to defray the expense of conducting the two activities. Usually the expense of operating the water system is met by a tax upon the amount of water used by each

householder. Frequently, the expense of erecting and maintaining a swimming pool is paid out of the general municipal tax fund. To say that one activity is governmental and the other private or proprietary is arbitrary. Such classification of the two activities is not based on sound, logical reasoning. However, it is quite generally held that a municipal corporation is exercising a proprietary function when it acquires and operates a water works system for the benefit of its inhabitants. On the other hand, the courts are hopelessly divided as to whether the establishment and operation of a swimming resort is a governmental or a proprietary function. *Crone* v. *City of El Cajon,* 133 Cal. App. 624, 24 P. (2d) 846; *City of Longmont* v. *Swearingen,* 81 Colo. 246, 254 P. 1000; *Hendricks* v. *Urbana Park District,* 265 Ill. App. 102; *Mocha* v. *City of Cedar Rapids,* 204 Iowa 51, 214 N. W. 587; *Gilliland* v. *City of Topeka,* 124 Kan. 726, 262 P. 493; *Mayor and City Council of Baltimore City* v. *State,* 173 Md. 267, 195 A. 571; *Mayor and City Council of Baltimore* v. *State,* 168 Md. 619, 179 A. 169, 99 A. L. R. 680; *Heino* v. *City of Grand Rapids,* 202 Mich. 363, 168 N. W. 512, L. R. A. 1918F, 528; *Nation* v. *St. Joseph* (Mo. App.), 5 S. W. (2d) 1106; *Thayer* v. *St. Joseph,* 227 Mo. App. 623, 54 S. W. (2d) 442; *Cunningham* v. *City of Niagara Falls,* 242 App. Div. 39, 272 N. Y. S. 720; *Glirbas* v. *City of Sioux Falls,* 64 S. D. 45, 264 N. W. 196; *Hannon* v. *Waterbury,* 106 Conn. 13, 136 A. 876, 57 A. L. R. 402, and note; and *Burton* v. *Salt Lake City,* 69 Utah 186, 253 P. 443, 51 A. L. R. 364, and note.

The Supreme Court, in applying the Federal income tax law, declined to follow the rule in the majority of states that conducting a municipal water system was a proprietary function. *Brush* v. *Commissioner of Internal Revenue,* 300 U. S. 352, 57 S. Ct. 495, 81 L. Ed. 691, 108 A. L. R. 1428, held that the chief engineer of the bureau of water supply, of the city of New York, as supervisor of the water system, was engaged in a governmental function, hence his salary, paid by the municipality, was exempt from the imposition of a Federal income tax. Mr. Justice Sutherland, in deliver-

ing the opinion of court, said [page 496] : "There probably is no topic of the law in respect of which the decisions of the state courts are in greater conflict and confusion than that which deals with the differentiation between the governmental and corporate powers of municipal corporations. This condition of conflict and confusion is confined in the main to decisions relating to liability in tort for the negligence of officers and agents of the municipality. In that field, no definite rule can be extracted from the decisions. It is true that in most of the state courts, including those in the State of New York, it is held that the operation of water works falls within the category of corporate activities ; and the city's liability is affirmed in tort actions arising from negligence in such operation. But the rule in respect of such cases, as we pointed out in *Trenton* v. *New Jersey*, 262 U. S. 182, 192, 43 S. Ct. 534, 538, 67 L. Ed. 937, 943, 29 A. L. R. 1471, has been 'applied to escape difficulties, in order that injustice may not result from the recognition of technical defenses based upon the governmental character of such corporations;' and the rule is hopelessly indefinite, probably for that very reason."

Confronted as we are by inconsistent statements in our own decisions as to what is and what is not a governmental function, and a sharp conflict in the decisions of other jurisdictions, we feel free to decide the question of tort arising from the activity of the municipality in maintaining an artificial swimming pool, as one of first impression.

Furnishing water to the inhabitants of a municipality for domestic purposes, and furnishing water to inhabitants to be used for the purpose of public swimming and bathing, are closely allied activities. Each activity tends to promote the health and happiness of its inhabitants. To hold a municipality liable for tort when engaged in one of these activities, and immune from liability when engaged in the other, is obviously unsound. This illogical distinction, with the harsh results inflicted upon the individual who has suffered personal injury through the negligence of the municipality or its servants, by which these activities are con-

ducted, has been severely criticized. See 19 Va. L. R. 97; 23 Mich. L. R. 325; 34 Mich. L. R. 1250; 34 Yale L. R. 129, 143, 229; 36 Yale L. R. 759, 1039; 28 Col. L. R. 577, 734; and note, 75 A. L. R. 1196.

When the Commonwealth or a municipal corporation, whether acting in its governmental or proprietary capacity, seizes or damages the property of a citizen for public good, compensation, under a constitutional mandate (Const., secs. 6 and 58), must be made to the owner. Common justice demands that the right to be safe in life and limb should be as sacred to the citizen as his property rights. The rule that results in this unfairness of the community group to the individual citizen has become apparent to many courts, hence the tendency of all recent decisions is not to extend the immunity of municipalities. Canada, Minnesota, California, New York, Washington and other states have recognized the evils mentioned, and have, by statute, to some extent at least, enlarged the liability of both the municipality and the state for the wrongful conduct of their officers and agents acting within the scope of their employment.

Under the circumstances stated, we hold that the operation of a swimming and bathing pool by a municipality under the provisions of its charter, or the general law, is a ministerial act, and that where a wrongful act causing injury is committed by the servants of a municipality in the performance of a purely ministerial act, the municipal corporation is liable as any other private corporation, even though it does not derive any pecuniary advantage from such activity.

Applying these principles to the facts alleged in plaintiff's notice of motion, we hold that it states a cause of action, and that the municipal corporation has a right to offer any and all defenses that a private corporation would have under the same circumstances. The application of these rules for the determination of liability will sufficiently safeguard the municipality and will have a tendency to induce greater caution in the maintenance of swimming pools for the safety of invited guests.

For the reasons stated, the judgment of the trial court is reversed, and the case remanded for further proceedings in accord with the principles herein announced.

*Reversed and remanded.*

EGGLESTON, J., dissenting.

The majority opinion holds that the operation by a municipality of a swimming pool for the free use of its citizens is a ministerial and not a governmental function, and that consequently the municipality is liable in damages for the tortious acts of its servants and employees in such operation.

It is true, as the majority opinion states, that there is a division of authority on the question, but I think the great weight of authority, as well as the better reasoning, favors the view that the operation of such a facility for the gratuitous use of its citizens is a governmental function, and that therefore the municipality is immune from liability in connection with such operation.

It is a matter of common knowledge that all branches of the government—national, state, and local—now engage in many functions for the common good of the people which only a short time ago were undreamed of. In this State we have beautiful parks and playgrounds maintained by the national, state, and municipal governments for the common enjoyment of our citizens. No one questions the view that in establishing and operating these recreational centers the respective branches of the government are acting in a governmental capacity. See *City of Lynchburg* v. *Peters,* 156 Va. 40, 48, 157 S. E. 769; *Rudacille* v. *State Commission, etc.,* 155 Va. 808, 814, 156 S. E. 829. Why is the same not true of a swimming pool operated without profit by a city as a part of one of its public playgrounds?

We had thought that these things, so obviously for the common good, should be encouraged, but the majority opinion is notice to the cities of this State that such playgrounds and parks are to be henceforth established and maintained at their peril. If the majority view is to pre-

vail, then every municipal playground will henceforth be a fruitful source of both litigation and liability.

Moreover, the majority opinion is contrary to the principles heretofore laid down by this court.

In *Ashbury* v. *Norfolk,* 152 Va. 278, 147 S. E. 223, we held that the collection of garbage, being for the common good and without the element of pecuniary profit, is a governmental function. To my mind, the operation of free parks or playgrounds and swimming pools for the recreation and upbuilding of the health of our children is just as essential to the common good as the collection of garbage.

But that is not all. In the *Ashbury Case* we cited with approval the reasoning of the court in *Bolster* v. *City of Lawrence,* 225 Mass. 387, 390, 114 N. E. 722, L. R. A. 1917B, 1285, in which it was expressly held that the operation of a bath house for the free use of the public was a governmental function. Other cases to this same effect will be found in the annotations in 51 A. L. R. 370 and 57 A. L. R. 406.

For these reasons I cannot agree with the majority opinion.

CAMPBELL, C. J., and HOLT, J., concur in this dissent.