## Frye, Admr., etc., v. City of Jeannette et al.

*Scales & Shaw*, for plaintiffs.
*Kunkle, Trescher & Snyder*, for City of Jeannette.
*Vincent E. Williams, Jr.*, for Westmoreland County.

McWHERTER, J., January 23, 1950.—In each of the above cases an action in trespass was filed against the City of Jeannette and the County of Westmoreland

for damages alleged to be due plaintiff in each case by reason of the death by drowning of two boys. Counsel for the County of Westmoreland has filed preliminary objections to the complaint in trespass assigning two reasons: "1. Said complaint reveals on its face that the dam in question was constructed by and remains the property of the Commonwealth of Pennsylvania.

"2. Said complaint charges defendant, County of Westmoreland, with negligence on the part of its employes in carrying out a governmental function of said county, for which said county would not be liable." The complaints filed in the above two cases are identical except for the ages of the deceased boys and the names of their surviving parents. The complaints set forth that on May 31, 1946, about 9 p.m., Carl Eugene Frye, aged 12 years, and Thomas Parsons, Jr., aged 16 years, were drowned in a pool of water approximately 15 feet in depth. Paragraphs 10 and 11 refer to the pool of water in the following manner: "10. That defendants above named permitted, over a long period of time, the said dry dam as constructed to overflow and thereby cause a pool of water approximately 15 feet in depth; and by negligently and carelessly allowing said dry dam to overflow the water in said pool formed a whirlpool or suction, thereby creating, due to the negligence of defendants aforesaid, a dangerous and hazardous condition.

"11. That said defendants, although knowing for a long period of time of the hazardous and dangerous condition of said pool of water created by the negligence of defendants aforesaid, failed and refused to drain said pool and failed and refused to fence said pool but on the other hand, held said pool in its dangerous and hazardous condition open as an invitation to decedent, Thomas Parsons, Jr., and other children to play around and use said pool, thereby enticing and

luring decedent, Thomas Parsons, Jr., and other children to use said pool."

Paragraph 12 sets forth that the boys drowned while playing in the water of the pool, were pulled under the water and drowned because of the suction created by the whirling of the water.

Plaintiffs complain that the overflow from a flood water dam formed the pool in which the boys drowned. The responsibility for the construction and maintenance of the flood water dam is set forth in paragraphs 6 and 7 of the complaint, which paragraphs read as follows: "6. That the City of Jeannette (then Jeannette Borough) and Westmoreland County, defendants above named, caused the Department of Forests and Waters of the Commonwealth of Pennsylvania, under the Act of Assembly of 1931, P. L. 528, to construct a dam on the property and farm of Gaetano Ruggiero, Michele Ruggiero, and Incoroneta Ruggiero in Penn Township, Westmoreland County, Pa., near the Pinchot Road leading to the City of Jeannette.

"7. That said dam was constructed at the instance of and for the benefit of the City of Jeannette and the County of Westmoreland, defendants above named, and at all times since said construction the said dam has been maintained by the City of Jeannette and the County of Westmoreland and the legal responsibility for the proper maintenance of said dam is in and under the control of the City of Jeannette and the County of Westmoreland, and was under their control on May 31, 1946."

Apparently, the basis for action against the County of Westmoreland and the City of Jeannette, defendants, is that these defendants either maintained an "attractive nuisance" or a "playground". It will be noted that paragraph 6 of the complaints alleges that the Department of Forests and Waters of the Commonwealth of Pennsylvania constructed the dam under the

4

terms of the Act of Assembly of 1931, P. L. 528. Section 1 of this act (32 P. S. §807) provides:

"The Water and Power Resources Board of the Department of Forests and Waters is hereby vested with authority, in the name of the Commonwealth of Pennsylvania, to determine the course and define the location, width and depth of any river or stream, or part thereof, wholly or partly within or forming part of the boundary of this Commonwealth, . . . Said board shall have power to protect the bed and banks of any stream, build dams, retaining walls, or other structures in or along rivers or streams, plug holes in the beds and banks thereof, and/or undertake such other works as will, in the opinion of the said board, improve and fix the regimen of any river or stream, or portion thereof, for the purpose of regulating the flow of such river or stream, for the prevention of percolations from streams through holes in the beds and banks thereof, for the protection of property, fish, life, and the lives of riparian owners and other persons, and for any other purpose not incompatible with the present and future interests of the Commonwealth and its people in the rivers, streams and water resources of the Commonwealth."

Section 3 of the same act (32 PS §809) provides:

"The Water and Power Resources Board may, in carrying out the provisions hereof, act on its own volition, or upon request of any person or persons, partnership, association, corporation, county, city, borough, town, or township, if the board considers the same necessary or advisable for any of the reasons set forth in section one of this act. . . . Where the board acts and undertakes any works herein authorized as the result of a request from a person or persons, partnership, association, corporation, county, city, borough, town, or township, the actual cost of such work or works shall be paid by the person or persons, partnership, asso-

ciation, corporation, county, city, borough, town, or township making such request."

We need not here pass on the question of whether or not the pool or playground constituted an attractive nuisance. The real question presented by the preliminary objections is whether the County of Westmoreland was acting in a public or governmental capacity, or in its corporate or proprietary capacity. If the former, the objections must be sustained. If the latter, the objections should be overruled.

In Scibilia v. Philadelphia, 279 Pa. 549, plaintiff, Guiseppe Scibilia, while standing at the side of a street in Philadelphia, was injured by an automobile truck, loaded with ashes, owned by the City of Philadelphia, and operated by an employe of the bureau of street cleaning of the department of public works. Plaintiff obtained a verdict in the court below and the city appealed to the Superior Court, which reversed the court below. In an opinion by Mr. Chief Justice Moschzisker the judgment of the Superior Court was affirmed. The opinion discusses the line of demarcation between the municipality acting in its corporate or business capacity where it may be held liable, and where it is performing the duties of a public or governmental character, in which case there is immunity from municipal liability. At page 555 the court said:

"Finally, in certain established instances, failure to comply with a duty of like imperative nature may also create a liability when a municipality acts in its public capacity, for example, in connection with the building or construction of highways or public works, or their repair (Allentown v. Kramer, 73 Pa. 406, 409); but, to date, these examples, and instances of nuisances on, or improper use of, governmentally owned real estate (Briegel v. Phila., 135 Pa. 451), *seem to mark the limit of municipal responsibility in respect to the exercise of public or governmental duties,* so far as our decisions

are concerned (see Elliott v. Phila., 75 Pa. 347, 349), though some of the language of this court in times past might indicate that the liability extends further. . . .

"As to the line of decisions already mentioned, where recovery of damages was allowed for injuries growing out of the negligent construction or maintenance of highways, since in some of these cases the courts have said that the governmental agencies were liable, and the rule of respondeat superior applied, because such negligence represented a breach of an imperative duty expressly imposed by the State on the municipalities, we must also notice that in several of our opinions we have taken occasion to point out that the decisions, fixing municipalities with responsibility for damages in this particular kind of case, are in a class by themselves, depending more on long established precedent than on fixed rules or pure logic: see Ford v. School District, 121 Pa. 543, 549; Briegel v. Phila., 135 Pa. 451, 458; Hubbard v. Crawford County, 221 Pa. 438, 439." Justice Moschzisker, in discussing the immunity of municipalities from suit by reason of the negligence of their police and fire departments, said, at page 556: "The ground of these latter decisions is that, even though a city is required to render a particular service to the public, it will not be liable for injuries inflicted in the performance of that duty if the service was of a governmental character, *delegated to the city to be performed on behalf of the sovereign state:* See Thompson on Negligence, vol. 5, sections 5833, 5836. Marked exceptions to this rule, such as the highway, public works and nuisance cases, do not affect the general principle: Haley v. Boston, 191 Mass. 291, 77 N. E. 888." (Italics supplied)  The court, in the Scibilia case stressed the point that in that case the city was gratuitously rendering service of a public character, for a high order of public benefit and not acting as a corporation in a revenue producing capacity: Bodge v.

Philadelphia, 167 Pa. 492, and Fox v. Philadelphia, 208 Pa. 127, were distinguished. In the latter case judgment was allowed to stand by reason of plaintiff's injuries sustained in the City Hall in Philadelphia apparently on the ground that the city was not only conducting purely governmental functions in the City Hall but also that the revenue producing and purely business departments of the city were there conducted.

In Hare, Admr., v. Denny et al., 64 D. & C. 1, a child died as a result of being bitten by a dog. The City of Greensburg was brought in as a party-defendant on the ground of the alleged negligence of the dog catcher employed by the city. President Judge Richard D. Laird wrote an exhaustive opinion citing many cases, including Scibilia v. Philadelphia, supra, and sustained a demurrer filed on behalf of the City of Greensburg. He held that the City of Greensburg, defendant, was acting in a governmental capacity in employing the dog catcher and was immune from a suit at law resulting from the alleged negligence of the dog catcher.

In Hartness v. Allegheny County, 349 Pa. 248, plaintiff sued the County of Allegheny by reason of alleged negligence in the operation of the old Allegheny County Court House. Plaintiff was struck by a mass of snow and ice that fell from a roof of that building. A compulsory nonsuit was entered by the court below which refused to take off the same, and the Supreme Court affirmed the judgment. Plaintiff claimed that the county procured revenue from certain public telephones in the hall, a bootblack stand, and the offices of the bureau of property and supplies. The court held that the mere fact that these activities were permitted in the courthouse was not sufficient to hold the county liable and that the predominant nature of the activities carried on within the building must control. It held that the principle use of the structure was governmental and

that the proprietary and business operations carried on within the building were relatively incidental and unimportant: Fox v. Philadelphia, 208 Pa. 127 and Bell et ux. v. Pittsburgh et al., 297 Pa. 185, were distinguished.

Section 3 of the Act of 1931, P. L. 528, supra, provides that the Water and Power Resources Board of the Department of Forests and Waters may proceed with the erection of dams, etc., may "act on its own volition, or upon request of any person or persons, partnership, association, corporation, county, city, borough, town, or township. . . ."

Plaintiffs' complaint says that the City of Jeannette and the County of Westmoreland "caused" the Commonwealth to erect the flood control dam. From a reading of the act anyone could have approached the Water and Power Resources Board and requested them to erect the flood control dam. Had the dam been erected at the instigation of one or more individual citizens certainly such citizens would not be responsible for negligence in the operation of the dam thereafter. The contention of plaintiffs that by reason of the city and county initiating the dam project they are liable has no merit.

The several members of this court have personal knowledge and take judicial cognizance of the necessity for the erection of the flood control dam, or dry dam as it is called in the pleadings. The City of Jeannette and the built-up communities in the watershed below it suffered from several floods two of which were quite severe and great property damage had occurred. The erection of the dam was a public necessity. It was for the public good not only of the people in Jeannette but for a number of other communities within the County of Westmoreland. The dam was erected by the State and the pleadings aver that the City of Jeannette and the county jointly

have since been responsible for the maintenance thereof. It was the primary duty of the State to maintain the dam once it was erected. If it delegated that duty to the city and the county then they were acting as agents for the Commonwealth. As such agents they were acting in a purely public or governmental capacity. It is not averred in the pleadings that any revenue was collected by either of defendants in the operation of the dam. The case is quite different from those cases where a municipality is operating a revenue-producing water works. This case is also entirely different from a case where a municipality is operating a public park with revenue producing features where it has been held that liability attaches for negligence of employes. Nothing has been here presented which would indicate that the County of Westmoreland, in the operation of this dam, was acting in a proprietary or in its corporate capacity.

The application of the general rules laid down by our courts sometimes appears to be harsh as to a particular litigant, but the rule that a county acting purely in a governmental capacity is not responsible for the negligence of its employes is of such long standing that there is no alternative for the court but to follow the rule. If the rule should be changed it is a proper subject for legislative enactment.

### Decree

Now, January 23, 1950, on due consideration, it is ordered, adjudged and decreed that the preliminary objections filed by and on behalf of the County of Westmoreland in each of the above cases be and the same are hereby sustained and the bill of complaint in each case is dismissed as to defendant, the County of Westmoreland.