Present: Carrico, C.J., Compton,[1] Lacy, Hassell, Keenan, Koontz, and Kinser, JJ.

CITY OF VIRGINIA BEACH

OPINION BY
v.  Record No. 990919      JUSTICE LAWRENCE L. KOONTZ, JR.
                                    March 3, 2000
CARMICHAEL DEVELOPMENT COMPANY


FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
H. Thomas Padrick, Jr., Judge


In this appeal, we consider whether the trial court erred in entering judgment against a locality for alleged tortious interference with a contract.

BACKGROUND

The Virginia Beach Society for the Prevention of Cruelty to Animals (the SPCA) acquired land (the property) in the City of Virginia Beach near the corner of General Booth Boulevard and Oceana Boulevard from the City for the operation of an animal shelter. The original agreement between the SPCA and the City provided that the property would revert to the City if the SPCA discontinued its use of the property. Subsequently, the City agreed to waive the reversion right and deeded the property to the SPCA in fee simple so that the SPCA might benefit from a sale of the property.

---

[1]Justice Compton participated in the hearing and decision of this case prior to the effective date of his retirement on February 2, 2000.

The SPCA thereafter relocated its shelter operation, but was unable to find a purchaser for the property. To enhance the marketability of the property, the SPCA obtained a rezoning of the property from agricultural to commercial use in 1986. As part of the rezoning, the City required the SPCA to dedicate "an appropriately sized controlled access and scenic easement along the frontage on General Booth Boulevard."

In April 1997, the SPCA entered into a contract for the sale of the property to Carmichael Development Company (Carmichael) for $610,000. Carmichael intended to develop the property as a shopping center and employed an engineering firm to draft a site development plan. Because the site development plan would require approval from the City director of planning or his assignee (the City planning office) for several modifications to the property, Carmichael and the SPCA subsequently amended their contract to include a condition that Carmichael obtain approval of a site plan for the proposed shopping center from the Virginia Beach City Council by April 3, 1998. Relevant to this appeal, Carmichael desired to obtain approval for a "curb cut" on General Booth Boulevard. A "curb cut" is an opening from a highway into a parking lot cut through a curb and/or the sidewalk.

Pursuant to Virginia Beach City Code, App. C, § 3.1, Carmichael requested a "preapplication conference" with the City

2

planning office.  Under this ordinance, a "preapplication conference" is an informal meeting between a developer and the City planning office to discuss a general proposal for development.  The request for a conference does not constitute a formal application for approval of a site development plan or otherwise satisfy the requirements for filing such a plan.

After reviewing Carmichael's "preliminary site plan," the City planning office advised Carmichael that the proposed curb cut would not be approved because of public safety concerns over anticipated traffic problems the proposed curb cut would create on General Booth Boulevard.  Although Carmichael's engineers wrote the planning officials several times indicating that Carmichael wished to receive a formal decision on the proposed curb cut so that the matter could be "appealed" to the City Council, a formal site plan application was never submitted to the City planning office for a recommendation, nor did Carmichael pay a filing fee as required by the City code.  Accordingly, the City planning office took no action on Carmichael's request and the matter was not forwarded to the Office of the City Manager to be placed on the City Council's agenda.

The SPCA informed the City that the failure to approve the curb cut would defeat the consummation of its contract with Carmichael, and that it would result in the organization losing

3

needed revenue. The SPCA asked the City to reconsider the decision to disapprove the curb cut. Thereafter, the City planning office began to explore the option of the City purchasing the property from the SPCA as part of a policy to acquire "troublesome parcels" to control development. On March 26, 1998, the City made a formal written offer to purchase the property from the SPCA for the same price Carmichael had offered.

On April 3, 1998, Carmichael informed the SPCA that it intended to file suit against the City to obtain an injunction to prohibit the City from acquiring the property. Carmichael requested an extension of its contract right to May 3, 1998 and offered to increase the purchase price by $5,000. The SPCA declined Carmichael's request for an extension and subsequently agreed to sell the property to the City.

On April 3, 1998, Carmichael filed a bill of complaint contending that the City tortiously interfered with Carmichael's contract to purchase the property from the SPCA by refusing to approve the requested curb cut and subsequently offering to buy the property from the SPCA.[2] Carmichael sought monetary damages in addition to injunctive relief.

---

[2]Carmichael subsequently argued to the trial court that the City further interfered with the contract by denying Carmichael a hearing before City Council on its curb cut request. Although

4

On July 31, 1998, the trial court denied Carmichael's request for a temporary injunction to prohibit the sale of the property to the City, finding that Carmichael had an adequate remedy at law. Thereafter, the parties agreed to transfer the case from the chancery docket to the law docket and to limit the issue of the suit to monetary damages for the City's alleged tortious interference with Carmichael's contract with the SPCA.

On September 9, 1998, the City filed a motion for summary judgment asserting, inter alia, that it was protected by sovereign immunity because the actions of which Carmichael complained fell within the proper governmental function of controlling land development and regulating and controlling traffic for public safety and welfare. The City was subsequently granted leave to file an amended answer asserting a defense of sovereign immunity.

The trial court heard argument on the motion for summary judgment immediately prior to trial and granted the City partial summary judgment on the ground that the approval or denial of a curb cut was a governmental function protected by sovereign immunity and, therefore, that it could not form the basis for a

_____

this theory was not expressly pled in the bill of complaint, the trial court apparently accepted that it was subsumed within the allegations relating to the denial of the curb cut by the City's planning officials.

5

tort claim against the City. The trial court permitted Carmichael's case to go forward on the theory that the City's offer to purchase the property tortiously interfered with Carmichael's contract with the SPCA. The case was also permitted to go forward on the theory that the actions of the City planning office denied Carmichael the opportunity to present the request for a curb cut to City Council and, thus, interfered with its efforts to meet the condition of its contract with the SPCA. See note 2, supra.

After evidence in accord with the above-recited facts was presented, the trial court, consistent with a concession made by Carmichael, instructed the jury "that the mere fact that the City made an offer to purchase the SPCA parcel is not improper." The jury was further instructed that "[i]f you find that the City's refusal to allow the "curb cut" on General Booth Boulevard was the only reason that Carmichael did not purchase the property, then you shall find that the City's inaction was the proximate cause of Carmichael's inability to complete the contract to purchase" the property. The jury was also instructed to find its verdict for Carmichael if it found "by the greater weight if the evidence . . . that the City used improper methods to cause the SPCA to terminate the contract."

The jury returned its verdict for Carmichael and awarded damages of $74,000. The trial court denied the City's motion to

set aside the verdict, Carmichael's motion for additur, and entered judgment on the jury's verdict.  We awarded the city this appeal.

DISCUSSION

Although the City challenges the judgment against it on several grounds, the dispositive issue in this appeal is whether the trial court erred in determining that the doctrine of sovereign immunity did not shield the City from Carmichael's claim of tortious interference with a contract relationship under the specific facts of this case.

"The doctrine of sovereign immunity is 'alive and well' in Virginia."  Messina v. Burden, 228 Va. 301, 307, 321 S.E.2d 657, 660 (1984).  Sovereign immunity is "'a rule of social policy, which protects the state from burdensome interference with the performance of its governmental functions and preserves its control over state funds, property, and instrumentalities.'"  Hinchey v. Ogden, 226 Va. 234, 240, 307 S.E.2d 891, 894 (1983) (quoting 72 Am.Jur.2d States, Territories, and Dependencies § 99 (1974)).  Most importantly, the doctrine of sovereign immunity provides for "smooth operation of government" and prevents "citizens from improperly influencing the conduct of governmental affairs through the threat or use of vexatious litigation."  Messina, 228 Va. at 308, 321 S.E.2d at 660; accord Lentz v. Morris, 236 Va. 78, 81, 372 S.E.2d 608, 610 (1988).

7

It is a frequently recited proposition that a municipality is authorized to perform both "governmental" and "proprietary" functions. Governmental functions, as the term implies, are powers and duties to be performed exclusively for the public welfare. When a municipality exercises, or fails to exercise, a governmental function, it is shielded from liability by sovereign immunity on the theory that the municipality is performing as an agency of the state. In contrast, proprietary functions are privileges and powers performed primarily for the benefit of the municipality and, thus, do not enjoy the shield of sovereign immunity. See Hoggard v. Richmond, 172 Va. 145, 147-48, 200 S.E. 610, 611 (1939). The regulation of traffic or a similar activity intended to protect the general public safety is a governmental function of a municipality. See, e.g., Transportation Inc. v. Falls Church, 219 Va. 1004, 1006, 254 S.E.2d 62, 64 (1979). The routine maintenance of a municipality's streets, however, is a proprietary function. See, e.g., Bialk v. City of Hampton, 242 Va. 56, 58, 405 S.E.2d 619, 620 (1991). As just these few examples illustrate, while the principle of law is clear and well-established, the application of it to various municipal activities is sometimes difficult. This is particularly so in cases where the activity in question has aspects of both governmental and proprietary functions. However, when governmental and proprietary functions

8

coincide, "the governmental function is the overriding factor" and the doctrine of sovereign immunity will shield the locality from liability.  Taylor v. Newport News, 214 Va. 9, 10, 197 S.E.2d 209, 210 (1973).

Carmichael has not assigned cross-error to the trial court's finding that the denial of the curb cut requested by Carmichael in its preliminary site plan was a governmental function protected by sovereign immunity and, therefore, could not constitute tortious interference with the contract in question.  Accordingly, that aspect of the trial court's ruling is not subject to review in this appeal.  The City contends, however, that the trial court's judgment that sovereign immunity barred any claim premised on the denial of the curb cut should have been dispositive of Carmichael's entire claim and that the trial court erred in not extending that judgment to its "necessary and logical conclusion."

Carmichael responds that the City "does not understand this case."  Carmichael asserts that while the decision to deny the curb cut requested in the preliminary site plan was a governmental function shielded by sovereign immunity, "what the City [planning office] did to prevent . . .a hearing" of Carmichael's appeal of that decision before the City Council constituted tortious interference.  In effect, Carmichael is asserting that while the governmental function of reviewing the

9

preliminary site plan would be subject to sovereign immunity, allegedly improper actions of the City's employees relevant to that review would not be shielded from liability. As previously noted, it was on this theory of liability that the trial court permitted Carmichael to proceed at trial.

While the City's contention is facially compelling, we need not address whether sovereign immunity applies to this theory of liability for the sufficient reason that Carmichael's own evidence contradicts its allegation that it was denied a hearing before the City Council because of the actions, improper or otherwise, of the City's officials. See Massie v. Firmstone, 134 Va. 450, 462, 114 S.E. 652, 656 (1922). The record is clear that Carmichael never complied with the procedures for obtaining a formal decision concerning the curb cut designated in its site plan from the City planning office. To the contrary, the record shows that Carmichael's engineers sought only to have the informal opinion offered at the "preapplication conference" reviewed by the City Council. There is no mechanism provided in the City's ordinances for such a review. Moreover, since Carmichael failed to file the appropriate site plan and pay the required fee, it is self-evident that there was no formal action by the planning office upon which the City Council could have ruled.

During oral argument, counsel for Carmichael contended that submission of the appropriate site plan for a formal decision would have been redundant since the planning officials had already indicated that the plan, as reviewed in the informal conference, would not be approved. However, there is nothing redundant about following the procedures required by law. Carmichael was cognizant of the necessary procedures and cannot be heard to complain that it was denied a hearing before the City Council when it failed to follow the procedures required to obtain that hearing.

Finally we address the City's contention that its offer to purchase the property was a governmental act protected by sovereign immunity. Although at trial Carmichael conceded, and the jury was instructed, that the City's offer to purchase the property was not per se improper since the contingent provision for approval of the curb cut in Carmichael's contract with the SPCA had not occurred, Carmichael contends that the City's purpose in denying approval of that curb cut was to facilitate the City's acquisition of the property and, thus, that the offer to purchase the property constituted tortious interference.

Unquestionably, when a locality acquires real estate for a valid governmental purpose, whether by contract or condemnation, that act is governmental in nature. Carmichael contends, however, that in this instance, the City acquired the property

11

for a strictly proprietary purpose. Carmichael noted at trial, for example, that the property was assessed at almost twice the proposed purchase price and, thus, the City might have been motivated by a desire for profit.

We agree that the City's policy of acquiring by contract and then reselling or leasing "troublesome parcels" has a proprietary aspect. However, that policy also has an aspect that is a governmental function. The facts developed at trial showed that the principal purpose of that policy is to resolve, efficiently and without resort to litigation, disputes over the proposed use of vacant land within the City in order to control and direct development consistent with the City's public safety concerns of vehicular traffic impacted by that development.

In addition, the record further undercuts Carmichael's contention that the City was motivated solely by a proprietary interest in acquiring the property. First, it is undisputed that the City was willing to resell the property to Carmichael at the same price for which it was acquired, providing only that Carmichael should accept the limitation that there would be no curb cut on General Booth Boulevard. Second, the City's motivation in originally deeding the property to the SPCA and then subsequently reacquiring it was consistent with the City's stated purpose to benefit the charitable purposes of the SPCA

12

that benefited the City and its citizens, which is an appropriate act for a local government.  <u>See</u> Code § 15.2-953(A).

In short, while there was a proprietary aspect to the City's act of acquiring the property, we are of opinion that on the facts of this case the overriding factor in the City's action was a governmental function to benefit the welfare and safety of the public.  Thus, we hold that the City's actions were shielded by sovereign immunity and could not constitute tortious interference with Carmichael's contract with the SPCA.

CONCLUSION

For these reasons, we will reverse the judgment of the trial court and enter final judgment for the City.

<u>Reversed and final judgment</u>.