# CIRCUIT COURT OF THE CITY OF HAMPTON

Traci Cleaves-McClellan

v.

Mukesh H. Shah *et al.*

June 30, 2016

Case No. (Civil) CL15-1918

By Judge David W. Lannetti

Today the Court rules on separate pleas in bar based on sovereign immunity filed by defendants the City of Hampton ("Hampton"), the City of Newport News ("Newport News"), the Hampton-Newport News Community Services Board (the "CSB"), and Mukesh H. Shah, M.D., as well as demurrers filed by the CSB and Shah. The issue regarding the pleas in bar is whether the defendants are entitled to sovereign immunity from claims of negligence alleged by plaintiff Traci Cleaves-McClellan. The Court finds, based on the CSB's serving a governmental function, that Hampton and Newport News are immune from liability for negligence and that the CSB and Shah are immune from liability for simple negligence. The issues regarding the demurrers are: (1) whether the complaint filed by Cleaves-McClellan alleges facts sufficient to support claims of gross negligence against the CSB and Shah; (2) whether the complaint alleges facts sufficient to support claims for punitive damages against the CSB and Shah; and (3) whether the tort of negligent supervision is recognized in Virginia. The Court finds that: (1) the complaint sufficiently alleges facts that could support a finding of gross negligence; (2) the complaint does not sufficiently allege facts that could support an award of punitive damages; and (3) negligent supervision is not a recognized cause of action in Virginia.

In light of the circumstances present here, the Court sustains Hampton's and Newport News's pleas in bar, sustains the CSB's and Shah's plea of sovereign immunity, overrules the CSB's and Shah's demurrers as to the gross negligence claims, sustains the CSB's and Shah's demurrers as to the punitive damages claim, and sustains the CSB's demurrer as to the negligent supervision claim.

## Background

Shah is a Virginia-licensed medical doctor and health care provider employed by the CSB as a psychiatrist. (Compl. 2; Tr. 7.) Cleaves-McClellan claims that Shah cared for and treated her at the CSB, located in Hampton, Virginia, for over one year, through July 2014, for "physical and mental illness, including bipolar disorder." (Compl. at 2-3.) She alleges that Shah mis-prescribed the drug Geodon (the "Drug") to her, failed to monitor her health, failed to discontinue the medication upon signs of complications from the Drug, failed to warn her of the danger of the Drug, and disregarded the warning signs of complications from the Drug. (*Id.* at 3.) Cleaves-

McClellan also claims that Shah "failed to obtain [her] informed consent . . . for treatment and by virtue thereof committed battery upon [her] and further committed battery by having unprivileged physical contact with her and continuing to prescribe and require [her] to take the drug despite adverse symptoms" she reported. (*Id.*) She further alleges that Shah's co-defendants committed negligence in hiring, monitoring, and supervising Shah because Shah was unqualified to treat her mental illness and failed to adequately monitor administration of the Drug. (*Id.*) The negligent hiring claim is based on allegations that Shah is not a psychiatrist and that the "Dr. Mukesh H. Shah" who is employed by the CSB and is the subject of these claims is the same "Dr. Mukesh H. Shah" who is a California-licensed podiatrist who was subject to disciplinary action in California. (Compl. 3; Br. in Opp'n to Dem., Special Plea in Bar, and Plea of Sovereign Immunity ("Br. in Opp'n") 2; Tr. 49-55.)

Cleaves-McClellan filed a complaint (the "Complaint") alleging negligence, gross negligence, and negligent hiring, monitoring, and supervision against the CSB, Hampton, Newport News, and the Commonwealth of Virginia. (*Id.* at 3-4.) The Complaint also includes a cause of action for medical malpractice, battery, and gross negligence against Shah. (*Id.* at 2-3.) Cleaves-McClellan further seeks punitive damages based on Shah's alleged "reckless and wanton conduct" and the other defendants' failure to screen and determine that Shah is not a psychiatrist. (*Id.* at 4.)

A hearing on the pleas in bar and the demurrers was held on May 2, 2016, during which all parties, with the exception of the Commonwealth of Virginia, were represented. At the time of the May 2, 2016, hearing, the Commonwealth of Virginia had not yet been served with process of the complaint.

## Positions of the Parties

### A. *Hampton's, Newport News's, and the CSB's Pleas in Bar*

Hampton and Newport News argue that they are immune from all causes of actions alleged by Cleaves-McClellan. (Hampton Plea in Bar ("Hampton Plea") 2; Newport News Plea of Sovereign Immunity ("Newport News Plea") 3.) Although the pleas filed by Newport News, the CSB, and Shah are not styled as pleas in bar, the requested relief is consistent with pleas in bar, and the Court treats them as such. The CSB and Shah argue that they are immune from claims of simple negligence. (CSB & Shah Plea of Sovereign Immunity and Dem. ("CSB & Shah Plea") 2.) These defendants argue that sovereign immunity extends to municipalities and their employees exercising their governmental functions, and that a function is considered governmental if it is pursuant to political, discretionary, or legislative authority. (Hampton Plea 2; Newport News Plea 2; CSB & Shah Plea 2.) Hampton and Newport News claim that § 37.2-500 of the Code of

Virginia mandates that they establish a community services board, which they assert is an exercise of a legislative function related to public welfare. (*Id.*) Hampton and Newport News contend that they, therefore, are immune from liability for any negligence alleged by Cleaves-McClellan. (Hampton Plea 2, Newport News Plea 2.) The CSB and Shah similarly contend that they are immune from liability for simple negligence as alleged by Cleaves-McClellan. (CSB & Shah Plea 3.)

Hampton makes the additional argument that it has no operational control over the CSB or its employees, including Shah. (Hampton Plea 3.) It argues that, under § 37.2.500 *et seq.* of the Code of Virginia, it has a limited role in funding the CSB and appointing CSB board members. (*Id.* at 3-4.) Hampton claims that Code § 37.2-504(A) grants to the CSB — and not the locality — the responsibility to set policies and regulations for the delivery of services and the operation of facilities under its supervision, which includes the responsibility to make employee hiring and termination decisions. (*Id.* at 4.) Hampton argues that, because CSB employees are solely employees of the CSB's board, Hampton cannot be vicariously liable for any of the CSB's acts. (*Id.* at 4.)

Hampton and Newport News also claim that they are immune from punitive damages. (Hampton Plea 3; Newport News Plea 3.)

Finally, Hampton claims that there is no cause of action in Virginia for negligent monitoring or supervision as alleged by Cleaves-McClellan in the Complaint. (Hampton Plea 4.)

## B. *Cleaves-McClellan's Response to the CSB's Plea in Bar*[1]

Cleaves-McClellan responds by stating that the CSB cites no Supreme Court of Virginia cases supporting the proposition that it was performing a governmental function. (Br. in Opp'n 3.) She also argues that, even if the CSB were engaged in a governmental function, immunity is limited to simple negligence. (*Id.* at 3-4.) She claims that acts of gross negligence and intentional torts, such as those Cleaves-McClellan alleges against the CSB, are not immunized. (*Id.*)

## C. *Shah's Plea of Sovereign Immunity*

Shah alleges that, during all times relevant to this litigation, he was an employee of the Commonwealth working within the course and scope of his employment at the CSB. (CSB & Shah Plea 1.) He argues that claims of simple negligence against officers, agents, and employees of the Commonwealth are barred. (*Id.* at 2.) He asserts that Cleaves-McClellan's claims of simple negligence as to him, therefore, should be dismissed. (*Id.*)

---

[1] Cleaves-McClellan did not respond to the Hampton or Newport News Plea in Bar.

## D. *Cleaves-McClellan's Response to Shah's Plea of Sovereign Immunity*

Cleaves-McClellan responds by arguing that, even assuming Shah is an employee of the CSB, only immunity for simple negligence exists. (Br. in Opp'n 3.) Cleaves-McClellan further argues that whether Shah is an independent contractor needs to be explored, and, if he is an independent contractor, sovereign immunity does not apply. (*Id.*)

## E. *The CSB's Demurrer*

The CSB argues that Cleaves-McClellan's gross negligence claim should be dismissed because it lacks a good-faith basis. (CSB & Shah's Plea 10.) It argues that Rule 1.3 of the Virginia Rules of Professional Conduct requires that a lawyer not bring a frivolous issue or claim. (*Id.* at 9.) The CSB states that Cleaves-McClellan has alleged that Shah is not a psychiatrist trained to treat her condition and that the CSB failed to investigate Shah's background. (*Id.*) The CSB contends that a simple search of the Virginia Board of Medicine's website reveals that Shah is a psychiatrist and that Cleaves-McClellan's counsel has made an unsupported claim for gross negligence. (*Id.* at 9-10.) The CSB argues that no evidence has been presented indicating that it ever acted in a grossly negligent manner, as Cleaves-McClellan alleges. (*Id.* at 10.) It claims that Cleaves-McClellan's gross negligence claim, therefore, cannot go forward. (*Id.*)

The CSB also asserts that Cleaves-McClellan's punitive damages claim against it should be dismissed. (*Id.*) It argues that no misconduct, malice, or recklessness can be alleged because Cleaves-McClellan makes her claim based on what is clearly a case of mistaken identity. (*Id.*) Alternatively, it argues that, because it is an agent of the state, it is immune from punitive damages pursuant to § 8.01-195.3 of the Code of Virginia. (*Id.* at 11.)

Finally, the CSB alleges that any claims for negligent training or supervision should be dismissed because Virginia does not recognize a cause of action for negligent training or supervision. (*Id.*)

## F. *Shah's Demurrer*

Shah argues that Cleaves-McClellan's claim of gross negligence against him cannot go forward. He asserts that gross negligence cannot exist as a matter of law when a defendant showed *some* degree of care, and Shah implies that Cleaves-McClellan concedes in the Complaint that he demonstrated some level of care. (CSB & Shah Plea 5-6.) He also argues that there are no facts in the Complaint to support a finding of gross negligence and that the allegations in the Complaint are merely conclusory. (*Id.*) Shah contends that Cleaves-McClellan's claim of gross negligence, therefore, should be dismissed. (*Id.* at 6.)

Shah also argues that Cleaves-McClellan's claim for punitive damages should be dismissed. (*Id.* at 8.) He asserts that a claim for punitive damages

must be supported by factual allegations sufficient to establish that a defendant's conduct was willful or wanton and that, in this case, Cleaves-McClellan has not alleged "intentional misconduct" or "willful or wanton" conduct. (*Id.* at 7-8.) Shah asserts that Cleaves-McClellan's punitive damages claim, therefore, should be dismissed. (*Id.* at 8.)

## G. *Cleaves-McClellan's Response to the CSB's and Shah's Demurrers*

Cleaves-McClellan responds to the CSB's and Shah's gross negligence argument by contending that she has properly pleaded facts supporting her claim of gross negligence. (Br. in Opp'n 4.) She asserts that several acts of negligence that, separately, may not amount to gross negligence can, when combined, equate to gross negligence. (*Id.*) She further asserts that what constitutes gross negligence is a matter to be resolved by a jury. (*Id.*)

Cleaves-McClellan responds to the punitive damages argument by claiming that she has properly pleaded intentional conduct and actual malice against the CSB and Shah. (*Id.* at 5.) She claims that punitive damages are appropriate in cases of intentional conduct and actual malice, and that the issue is a matter to be determined by a jury. (*Id.*) Finally, she alleges that the CSB cannot use the defense of sovereign immunity because its failure to investigate Shah's background and the related subsequent negligent hiring rises to the level of gross negligence. (*Id.* at 6-7.)

## *Legal Standard*

A demurrer tests the legal sufficiency of the claims stated in the pleading challenged. *Dray v. New Mkt. Poultry Prods., Inc.*, 258 Va. 187, 189, 518 S.E.2d 312, 312 (1999). The only question for the court to decide is whether the facts pleaded, implied, and fairly and justly inferred are legally sufficient to state a cause of action against the defendant. *Thompson v. Skate Am., Inc.*, 261 Va. 121, 128, 540 S.E.2d 123, 126-27 (2001). On demurrer, the court must admit "the truth of all material facts properly pleaded, facts which are impliedly alleged, and facts which may be fairly and justly inferred from the alleged facts." *Cox Cable Hampton Rds., Inc. v. City of Norfolk*, 242 Va. 394, 397, 410 S.E.2d 652, 653 (1991). A demurrer does not admit the correctness of any conclusions of law, however. *Ward's Equip., Inc. v. New Holland N. Am., Inc.*, 254 Va. 379, 382, 493 S.E.2d 516, 518 (1997).

Even if imperfect, a complaint drafted such that a defendant cannot mistake the true nature of the claim should withstand demurrer. *CaterCorp, Inc. v. Catering Concepts, Inc.*, 246 Va. 22, 24, 431 S.E.2d 277, 279 (1993). The court will not consider any factual assertions outside the pleadings for purposes of a demurrer. *See* Va. Code § 8.01-273. If a court sustains a demurrer, it is within the court's discretion to allow leave to amend the complaint, and such leave "shall be liberally granted in furtherance of the ends of justice." Va. Sup. Ct. R. 1:8.

A plea in bar presents a distinct issue that, if proven, creates a bar to the plaintiff's right of recovery. *Hilton v. Martin*, 275 Va. 176, 177, 654 S.E.2d 572 (2008). The purpose of a plea in bar is "to narrow the litigation by resolving an issue that will determine whether a plaintiff may proceed to trial on a particular cause of action." *Hawthorne v. VanMarter*, 279 Va. 566, 578, 692 S.E.2d 226, 234 (2010). The movant has the burden of proving the dispositive fact raised in a plea in bar. *Tomlin v. McKenzie*, 251 Va. 478, 480, 468 S.E.2d 882, 884 (1996). As with a demurrer, the facts contained within the complaint are considered true for purposes of a plea in bar. *Id.*

Gross negligence is "that degree of negligence which shows an utter disregard of prudence, amounting to complete neglect of the safety of another, such as to be shocking to reasonable men." *Finney v. Finney*, 203 Va. 530, 533, 125 S.E.2d 191, 193 (1962). "Gross negligence is substantially and appreciably higher in magnitude than ordinary negligence. It is materially more want of care than constitutes simple inadvertence." *Thomas v. Snow*, 162 Va. 654, 661-62, 174 S.E. 837, 839 (1934). Whether gross negligence is proven "depends on the facts and circumstances in each case, and each case is governed by its own facts. If the evidence is such that reasonable men should not differ as to what is proved, the question is one of law for the court." *Finney*, 203 Va. at 533, 125 S.E.2d at 193. "If fair-minded people can differ respecting the conclusion to be drawn from the evidence, a jury question is presented." *Meagher v. Johnson*, 239 Va. 380, 383, 389 S.E.2d 310, 311 (1990).

"A claim for punitive damages at common law in a personal injury action must be supported by factual allegations sufficient to establish that the defendant's conduct was willful or wanton." *Woods v. Mendez*, 265 Va. 68, 76, 574 S.E.2d 263, 268 (2003). When examining the sufficiency of a claim for punitive damages, a court looks at the particular facts of the case to evaluate whether the plaintiff sufficiently pleaded that the defendant's actions were willful and wanton. *Alfonso v. Robinson*, 257 Va. 540, 545, 514 S.E.2d 615, 618 (1999). Unlike pleading ordinary negligence, pleading willful and wanton negligence to support a claim for punitive damages "requires an actual or constructive consciousness that injury will result from the act done or omitted." *Id.*

"The doctrine of sovereign immunity is 'alive and well' in Virginia." *Messina v. Burden*, 228 Va. 301, 307, 321 S.E.2d 657, 660 (1984). The Commonwealth of Virginia cannot be sued absent its permission. *Board of Pub. Works v. Gannt*, 76 Va. 455, 461 (1882). "In the absence of express statutory or constitutional provisions waiving immunity, the Commonwealth and its agencies are immune from liability for the tortious acts or omissions of their agents or employees." *Baumgardner v. Southwestern Va. Mental Health Inst.*, 247 Va. 486, 489, 593 S.E.2d 400, 402 (1994).

The Supreme Court of Virginia "has outlined a four-factor test for determining whether an individual working for an immune governmental

entity . . . is entitled to the protection of sovereign immunity." *Friday-Spivey v. Collier*, 268 Va. 384, 387-88, 601 S.E.2d 591, 593 (2004). In determining a state employee's claim for immunity, courts should consider the following:

> (1) the nature of the function performed by the employee; (2) the extent of the state's interest and involvement in the function; (3) the degree of control and direction exercised by the state over the employee; and (4) whether the act complained of involved the use of judgment and discretion.

*McBride v. Bennett*, 288 Va. 450, 455, 764 S.E.2d 44, 46 (2014) (citing *James v. Jane*, 221 Va. 43, 53, 282 S.E.2d 864, 869 (1980)).

There are limited exceptions to sovereign immunity for governmental employees. James, 221 Va. at 53, 282 S.E.2d at 869. "A state employee who acts wantonly, or in a culpable or grossly negligent manner, is not protected." *Id.* Additionally, "the employee who acts beyond the scope of his employment, who exceeds his authority and discretion, and who acts individually" is not protected. *Id.* at 53, 282 S.E.2d at 869.

In general, municipalities are considered to have two functions: governmental functions and proprietary functions. *Hoggard v. Richmond*, 172 Va. 145, 147, 200 S.E. 610, 611 (1939). Governmental functions are those where "the municipality acts as an agency of the state to enable it to better govern that portion of its people residing within its corporate limits." *Id.*; *see also City of Va. Beach v. Carmichael Dev. Co.*, 259 Va. 493, 499, 527 S.E.2d 778, 782 (2000) (defining governmental functions as "powers and duties to be performed exclusively for the public welfare"). Proprietary functions, on the other hand, are those carried out by the municipality "in its corporate or proprietary character" and are "exercised for its private advantage. In the performance of these duties the general public may derive a common benefit, but they are granted and assumed primarily for the benefit of the corporation." *Hoggard*, 172 Va. at 148, 200 S.E. at 611. The Supreme Court of Virginia has held that, when a municipality acts within its governmental function, it is "exempt from liability for its failure to exercise [these powers], and for the exercise of them in a negligent or improper manner." *Id.* at 147, 200 S.E. at 611.

In addition to their immunity from tort liability, municipalities also are immune from punitive damages. Newport v. Fact Concerts, 453 U.S. 247, 271 (1981); accord Chesapeake v. Cunningham, 268 Va. 624, 640, 604 S.E.2d 420, 430 (2004).

*Discussion*

The Court has considered the pleadings, oral argument at the May 2, 2016, hearing, and applicable authorities. The Court now rules on the issues before it.

A. *The Cities of Hampton and Newport News Are Entitled to Sovereign Immunity*

Hampton and Newport News are municipalities within the Commonwealth of Virginia that are entitled to immunity from suits for torts committed in the performance of governmental functions. *Hoggard,* 172 Va. at 147, 200 S.E. at 611. "A function is considered governmental if it is the exercise of an entity's political, discretionary, or legislative authority." *Carter,* 259 Va. at 591, 527 S.E.2d at 785. Governmental functions "enable [the entity] to better govern that portion of its people residing within its corporate limits," *Hoggard,* 172 Va. at 147, 200 S.E. at 611, and are "performed exclusively for the public welfare," *Carmichael Dev. Co.,* 259 Va. at 499, 527 S.E.2d at 782.

Cities and counties, or combinations thereof, are statutorily required to establish community services boards. Va. Code § 37.2-500 ("Every county or city shall establish a community services board by itself or in any combination with other cities and counties, unless it establishes a behavioral health authority"). Virginia courts have held that the operation of government-run medical facilities, including hospitals, is a governmental function. *See, e.g., Carter,* 259 Va. at 588, 527 S.E.2d at 783; *Richmond v. Long's Adm'rs,* 58 Va. (17 Gratt.) 375, 386-87 (1867); *Hughes v. Lake Taylor City Hosp.,* 54 Va. Cir. 239 (Norfolk City 2000).

The CSB was formed by Hampton and Newport News in 1971 to fulfill the legislative mandate to "function as the single point of entry into publicly funded mental health, developmental, and substance abuse services." (Newport News Plea, Ex. 1 (Newport News City Council Resolution No. 9107-98).) As the establishment of the CSB is clearly an exercise of legislative authority and because it was created to enhance the welfare of the people residing within Hampton and Newport News, the Court finds that the CSB serves a governmental function for which the cities are entitled to immunity from tort liability. *See Ashbury v. Norfolk,* 152 Va. 278, 282, 147 S.E. 223, 224 (1929) ("[T]he municipality is not liable therefor in tort when the negligence which is charged occurred in the performance of that particular [governmental] function, and no nuisance is thereby created.").

Where, as here, the acts or omissions comprising the alleged negligence arise out of governmental functions of municipalities, as well as the exercise of the municipalities' legislative authority to create and fund the CSB, the theories of tort liability are irrelevant to the Court's determination. *See Niese v. Alexandria,* 264 Va. 230, 241, 564 S.E.2d 127, 134 (2002) ("[T]he

liability or non-liability of a city for acts committed by it [is determined] according to whether the act was done in its governmental or proprietary character. If the act be done in carrying out a governmental function, the city is not liable."). Although a municipal employee may personally be held liable for his own gross negligence, Hampton and Newport News are not vicariously liable for such negligence. *See Gordon v. Winchester*, 38 Va. Cir. 274, 278 (Warren Cnty. 1995).

In addition to their immunity from tort liability, Hampton and Newport News also are immune from punitive damages. *Newport*, 453 U.S. at 271; *Cunningham*, 268 Va. at 640, 604 S.E.2d at 430.

Because Hampton and Newport News are immune from tort liability and punitive damages, the Court sustains their pleas in bar.

Hampton also makes a separate argument that it is not liable for the negligence of the CSB and Shah because it does not have operational control over the CSB. Because the Court has sustained Hampton's plea of sovereign immunity, it need not address the issue of control.

### B. *The CSB Is Entitled to Sovereign Immunity for Simple Negligence*

As discussed *supra,* municipalities are immune from negligence claims arising from their performance of governmental functions, and the creation of a community services board is a governmental function. Community services boards are mandated by the General Assembly and exist for the welfare of the residents of the municipalities they serve. The CSB is not itself a municipality within the Commonwealth but rather is an entity created by Hampton and Newport News. Entities created by localities can either be considered municipal corporations, which are entitled to immunity from governmental functions, or local authorities, which derive their immunity from the municipalities that created them. *Virginia Elec. & Power Co. v. Hampton Redev. & Hous. Auth.*, 217 Va. 30, 32-34, 225 S.E.2d 364, 367-68 (1976). It is not necessary to determine whether the CSB is a municipal corporation or an arm or agency of the Commonwealth, as the resulting immunity is identical under the circumstances. The CSB is immune from claims of tort liability in the exercise of governmental functions.

Just as the creation and funding of the CSB is a governmental function of Hampton and Newport News, the operation of the CSB likewise is a governmental function, as it provides services "for the general benefit and well-being of" the citizens of Hampton and Newport News. *See Edwards v. Portsmouth*, 237 Va. 167, 172, 375 S.E.2d 747, 750 (1989). The Supreme Court of Virginia previously held that a county health commission "was entitled to immunity from tort liability . . . because the operation of a nursing home was a governmental function." *Carter v. Chesterfield Cnty. Health Comm'n*, 259 Va. 588, 594, 527 S.E.2d 783, 787 (2000). The Supreme Court of Virginia also previously held that public hospitals are not liable

for the torts of their employees. *Maia's Adm'rs v. Eastern State Hosp.*, 97 Va. 507, 34 S.E. 617 (1899).

This Court finds, as another circuit court previously found, that "the providing of mental health services by the CSB is not a ministerial act of a proprietary nature but an exercise of the power delegated to the CSB for the general benefit and well-being of the population it serves and [therefore is] governmental in nature." *Peterson v. Commonwealth*, 80 Va. Cir. 21, 35 (Montgomery Cnty. 2010); *see also Orellana v. Region Ten Cmty. Servs. Bd.*, 60 Va. Cir. 350, 351 (Charlottesville City 2002) (finding that a "social detoxification program" operated by a community services board "serve[d] an important governmental function").

Because the CSB is engaged in a governmental function, it is entitled to immunity from simple negligence. The Court, therefore, sustains CSB's plea of sovereign immunity.

## C. *Shah Is Entitled to Sovereign Immunity for Simple Negligence*

Because the "government can function only through its servants . . . certain of those servants must enjoy the same immunity in the performance of their discretionary duties as the government enjoys." *First Va. Bank-Colonial v. Baker*, 225 Va. 72, 79, 301 S.E.2d 8, 12 (1983). To determine whether Shah is a governmental employee entitled to sovereign immunity, the Court applies the four-factor test established by the Virginia Supreme Court in *James v. Jane*, 221 Va. 43, 282 S.E.2d 864 (1980). Although Cleaves-McClellan argues in her opposition brief that Shah may be an independent contractor (Br. in Opp'n 3.), she clearly alleges in the Complaint that Shah "was the agent and employee" of the CSB. (Compl. 2.)

With respect to the first factor — the nature of the function performed by the employee — the evidence at the May 2, 2016, hearing demonstrated that Shah served as a provider of psychiatric services to residents of the Hampton and Newport News communities. These services were performed in furtherance of the Commonwealth's interests in providing "publicly funded mental health, developmental, and substance abuse services." Va. Code § 37.2-500. The Supreme Court of Virginia stated in referring to this factor, as well as to the second factor, that "if the function that a government employee was negligently performing was essential to a governmental objective and the government had a great interest and involvement in that function, those factors would weigh in favor of the employee's claim of sovereign immunity." *Lohr v. Larsen*, 246 Va. 81, 85, 431 S.E.2d 642, 644 (1993). Here, the Court finds that Shah's service as a CSB employee was essential to a governmental objective and that the government had a great interest and involvement in that function.

The second factor is the extent of the state's interest and involvement in the function. As with the physician in *Lohr*, to whom sovereign immunity was extended, Shah "could neither choose his patients nor forgive any part

of the fees fixed by the clinic for his services," and his "salary . . . had no relation to fees paid by persons who received clinic services." *Compare id.* at 86, 431 S.E.2d at 644, *with* Tr. 8-9. Further, like the interest in the physician's function in *Lohr*, the Commonwealth's interest in Shah's function "is evident" through its attempts "to provide quality medical care in certain specified areas for citizens of this State who are economically unable to acquire those services in the private sector." *Lohr*, 246 Va. at 86, 431 S.E.2d at 645. By providing psychiatric care to CSB patients, Shah was performing essential services in furtherance of the Commonwealth's statutorily stated interest in providing "publicly funded mental health, developmental, and substance abuse services."

The third factor the Court considers in determining whether sovereign immunity shields Shah from claims of negligence arising from his employment is the degree of control and direction exercised by the government over him. "A high level of control weighs in favor of immunity; a low level of such control weighs against immunity." *Id.* at 88, 431 S.E.2d at 646. In *James*, immunity was denied to physicians who "exercise[d] broad discretion in selecting the methods by which they care[d] for [their] patients" and who had discretion to refuse to treat certain patients. 221 Va. at 48, 282 S.E.2d at 866. In contrast, the Commonwealth in *Lohr* "control[led] 'absolutely' the equipment [the medical provider] used, the procedures he could perform and even the brand names of the medication he [could] prescribe," and he could not "decline to accept a particular person as a patient." 246 Va. at 88, 431 S.E.2d at 646. Like the physician in *Lohr*, Shah had no "discretion with regard to choosing patients to treat," and he was "required to follow all Hampton/Newport News Community Services Board policies and procedures." (Tr. 8.) Although evidence is lacking as to the extent of the "policies and procedures" the CSB required Shah to follow, and it is unknown whether Shah had the freedom to select treatment methods or brands of medications, it is undeniable that the degree of control exercised by the Commonwealth over Shah is greater than that in *James* and appears much more like that in *Lohr*.

The fourth factor in the *James* test concerns whether the act complained of involved the use of judgment and discretion. Notwithstanding the fact that a higher degree of state control over the employee weighs in favor of immunity, where the act complained of involves the use of judgment and discretion, a finding of immunity is supported. *Lohr*, 246 Va. at 87, 431 S.E.2d at 645.

The Supreme Court of Virginia explains this apparent conflict, noting:

> At first glance, the issue of wide discretion that influences our consideration of the grant of governmental immunity in applying the third element of the *James* test appears to be at odds with our consideration of a higher level of governmental control in the application of the fourth element of that test in

this case. However, when a government employee is specially trained to make discretionary decisions, the government's control must necessarily be limited in order to make maximum use of the employee's special training and subsequent experience.

*Lohr*, 246 Va. at 88, 431 S.E.2d at 646.

Regardless of the discretion necessary to perform the employee's position as a whole, sovereign immunity applies only to "acts of judgment and discretion which are necessary to the performance of the governmental function itself," *Heider v. Clemons*, 241 Va. 143, 145, 400 S.E.2d 190, 191 (1991), and does not apply to an employee's negligent performance of ministerial duties, *Baker*, 225 Va. at 78, 301 S.E.2d at 11. Here, Shah was employed as a psychiatrist who allegedly was negligent in treating and prescribing medications to Cleaves-McClellan. Shah testified that he exercised his judgment and discretion in his position generally and in treating Cleaves-McClellan specifically (Tr. 9.) and, indeed, the facts alleged in the Complaint imply that Shah exercised discretion in discharging his duties at the CSB. (Compl. 3.)

The Court notes that the Supreme Court of Virginia previously found that state-employed physicians exercised judgment and discretion in performing their duties. *See Lohr*, 246 Va. at 81, 431 S.E.2d at 642; *Gargiulo v. Ohar*, 239 Va. 209, 215, 387 S.E.2d 787, 791 (1990).

Because Shah is employed by a city agency as a psychiatrist who: (1) performs governmental functions; (2) performs services essential to the furtherance of the Commonwealth's interests; (3) was subject to the control and direction of the CSB; and (4) exercised his own judgment and discretion in the discharge of his duties, Shah is entitled to immunity from claims of simple negligence. The Court, therefore, sustains Shah's plea of sovereign immunity.

D. *The Complaint Sufficiently Alleges Facts To Support a Cause of Action for Gross Negligence*

Pursuant to Rule 3:18 of the Rules of Supreme Court of Virginia, "[a]n allegation of negligence . . . is sufficient without specifying the particulars of the negligence." Va. Sup. Ct. R. 3:18. Notwithstanding this rule, as this Court has held previously, "a plaintiff must still allege facts sufficient to support each element" of negligence. *Doe v. Virginia Wesleyan Coll.*, 90 Va. Cir. 345, 361 (Norfolk City 2015).

Cleaves-McClellan bases her gross negligence claims against the CSB and Shah on allegations that Shah:

> violated the standard of care and committed medical malpractice by mis-prescribing the drug Geodon, failing

to monitor [Cleaves-McClellan], failing to discontinue medication at signs of complications from the drug Geodon, failing to warn of the dangers and dilatory effects of the drug, notwithstanding its known and adverse effects . . . and did disregard the warnings and clinical signs of complications from the drug, as well as the complaints and adverse symptoms being suffered by [Cleaves-McClellan].

(Compl. 3.) Although Cleaves-McClellan does not allege any acts of negligence committed by the CSB other than its alleged negligent hiring of Shah, the Court presumes Cleaves-McClellan seeks to hold the CSB liable for Shah's alleged gross negligence under a theory of vicarious liability.

Gross negligence is "that degree of negligence which shows an utter disregard of prudence, amounting to complete neglect of the safety of another, such as to be shocking to reasonable men." *Finney v. Finney*, 203 Va. 530, 533, 125 S.E.2d 191, 193 (1962). It is an "action which shows indifference to others, disregarding prudence to the level that the safety of others is completely neglected." *Wilby v. Gostel*, 265 Va. 437, 445-46 (2003). The Supreme Court of Virginia has held that "[a] claim of gross negligence . . . will not lie if the defendant exercised some degree of care with regard to the plaintiff." *Whitley v. Commonwealth*, 260 Va. 482, 490, 538 S.E.2d 296, 300 (2000).

In *Whitley*, a prior federal court had found that a doctor "actively monitored [the patient]'s condition by reviewing his blood samples, counseling him regarding the importance of taking his medication, and assessing his capability of following a daily medication regimen." *Id.* The *Whitley* court found, based on the earlier factual findings, that the defendant had exercised some degree of care and that, as a matter of law gross negligence could not be found. *Id.* Similarly, in *Colby v. Boyden*, the court dismissed a claim of gross negligence because, "based on the stipulated facts, [the defendant] 'did exercise some degree of diligence and due care.'" Unlike in *Whitley* and *Colby*, no findings of fact have been made or stipulated to in this case and, on demurrer, the Court must accept the truth of all material facts pleaded in the Complaint. *See Cox Cable Hampton Rds., Inc.*, 242 Va. at 397, 410 S.E.2d at 653. "Ordinarily, the question whether gross negligence has been established is a matter of fact to be decided by a jury." *Frazier v. Norfolk*, 234 Va. 388, 393, 362 S.E.2d 688, 691 (1987).

The Court recognizes that, "when persons of reasonable minds could not differ upon the conclusion that such negligence has not been established, it is the court's duty to so rule," but such is not the case here. *Id.* Of the cases cited by Shah in his demurrer, the only one in which the court evaluated the alleged facts and determined, as a matter of law, that they did not support gross negligence is *Frazier*. In that case, the court held, as a matter of law, that "the city's failure to install protective devices or to post warnings for

children at a platform edge which was open and obvious" did not rise to the level of gross negligence. *Frazier*, 234 Va. at 393, 362 S.E.2d at 691. In contrast, in *Burns v. Gagnon*, the Supreme Court of Virginia found that a reasonable jury could have found that a school principal was grossly negligent when he received a message indicating that a student "'was going to get into a fight' sometime that day" and that, "[u]pon receiving [the] report, [the principal] wrote down [the student's] name and said that he would 'alert security,' that 'he would look into it,' and that he would 'take care of it,'" but did not in fact respond to the report. 283 Va. 657, 678, 727 S.E.2d 634, 647 (2012).

Cleaves-McClellan alleges in the complaint that Shah prescribed medications to her, a fact that supports a finding that Shah exercised some degree of care in discharging his duties toward Cleaves-McClellan. (Compl. 4.) The facts allegedly supporting a claim of gross negligence are that Shah failed to monitor Cleaves-McClellan, failed to warn her of the effects of the medication, and failed to discontinue her medication in light of her complaints of known adverse side effects. (*Id.* at 3.) These facts are in direct contrast to those in *Whitley*, where the doctor monitored and counseled his patient about medications. 260 Va. at 490, 538 S.E.2d at 300. The acts of gross negligence Shah is alleged to have committed are far closer in severity to those alleged in *Burns* than those in *Frazier, Whitley,* and *Colby*. The Court, therefore, finds that, assuming the allegations in the Complaint to be true, as the Court must, a reasonable jury could find that Shah and the CSB, as Shah's employer, committed gross negligence in the treatment of Cleaves-McClellan.

The Court, therefore, overrules the CSB's and Shah's demurrers as to the gross negligence cause of action.

### E. *The Complaint Does Not Sufficiently Allege Facts To Support a Claim for Punitive Damages*

"A claim for punitive damages . . . must be supported by factual allegations sufficient to establish that the defendant's conduct was willful or wanton." *Woods v. Mendez*, 265 Va. 68, 76, 574 S.E.2d 263, 268 (2003). Cleaves-McClellan alleges in her Complaint that "Shah was reckless and wanton [in his] conduct" and that "[h]is continuation to prescribe the drug Geodon, despite [Cleaves-McClellan's] continuous complaints, and adverse symptoms, and his intentional continuing of the dosage despite her complaints constituted a wanton indifference to [Cleaves-McClellan's] rights." (*Id.* at 4.) The Complaint also alleges that Shah "committed battery by having unprivileged physical contact with her" and by treating Cleaves-McClellan without obtaining her informed consent. (*Id.* at 3.) According to Cleaves-McClellan, "Shah's Co-Defendants," including the CSB, "wantonly and with reckless disregard of [her] rights failed to screen . . .

Shah[,] . . . and their failure to investigate his background . . . is a further wanton and intentional disregard of [her] rights." (*Id.* at 4.)

Willful and wanton conduct "requires an actual or constructive consciousness that injury will result from the act done or omitted." *Alfonso v. Robinson*, 257 Va. 540, 545, 514 S.E.2d 615, 618 (1999). Although the act complained of need not be intentional, and ill will need not be shown, the act either must be intentional or "must involve a reckless disregard for the rights of another and will probably result in an injury." *Infant C. v. Boy Scouts of Am.*, 239 Va. 572, 582, 391 S.E.2d 322, 327 (1990). Cleaves-McClellan bases her claim for punitive damages on, *inter alia*, an alleged battery committed by Shah, but fails to plead any specific facts in support thereof. Cleaves-McClellan likewise has not pleaded facts in support of her argument that the defendants' conduct was willful and wanton sufficient to show a conscious disregard of her rights or to demonstrate that injury would likely result from their acts.

Regarding Cleaves-McClellan's claim of punitive damages related to the CSB's alleged negligent hiring of Shah, even if the Dr. Mukesh H. Shah employed by the CSB is in fact the Dr. Mukesh H. Shah who was subject to disciplinary action in California,[1] Cleaves-McClellan has not alleged that the CSB knew of Shah's *alter ego* or that this information would have come to light during a routine background investigation. In sum, Cleaves-McClellan has not sufficiently pleaded that the CSB's alleged negligent hiring of Shah rises to the level of willful or wanton conduct likely to result in an injury.

The Court, therefore, sustains the CSB's and Shah's demurrers as to the punitive damages claim.

The CSB argues, in the alternative, that it is immune from claims for punitive damages. Because the Court sustains the CSB's demurrer to the punitive damages claim due to the insufficiency of alleged facts, the Court need not resolve at this time whether the CSB is immune from punitive damages.

## F. *Virginia Does Not Recognize the Tort of Negligent Supervision*

The viability of a negligent supervision claim in Virginia is unclear, despite being addressed by the Supreme Court of Virginia previously. (Although Cleaves-McClellan alleges both negligent monitoring and negligent supervision, the Court finds the two claims to be synonymous under the facts alleged and, therefore, treats them collectively as a claim for negligent supervision) In *Chesapeake & Potomac Tel. Co. v. Dowdy*, the Court held that "[i]n Virginia, there is no duty of reasonable care imposed upon an employer in the supervision of its employees *under these circumstances* and we will not create one here." 235 Va. 55, 61, 365

---

[1] For purposes of this demurrer, the Court accepts this allegation as fact, as it must.

S.E.2d 751, 754 (1988) (emphasis added). Despite the apparently limiting language, Virginia circuit courts and federal courts applying Virginia law routinely interpreted *Dowdy* to hold that negligent supervision is not a cause of action in Virginia. *See Lawrence v. Sentara Hosps.-Norfolk*, 90 Va. Cir. 232, 233 (Norfolk City 2015) (summarizing the current circuit court split regarding the recognition of Virginia negligent supervision claims).

Although no case of precedential value has emerged clarifying the holding in *Dowdy* and thereby settling the question of whether negligent supervision is actionable in Virginia, the Supreme Court of Virginia issued an unpublished order in 2013, wherein it simply stated that "Virginia does not recognize a claim for negligent supervision." *Williams v. Shall*, No. 120889, at *3 (Sup. Ct. Va. June 6, 2013) (citing *Dowdy*, 235 Va. 55, 365 S.E.2d 751). Although the order is unpublished,[1] the Court finds the Supreme Court's interpretation of its own case law highly persuasive and indicative that in the future it likely will formally declare that negligent supervision claims are not cognizable in Virginia. The Court, therefore, agrees with the majority of Virginia circuit courts and holds that negligent supervision is not a recognized cause of action in Virginia.

The Court is mindful of the fact that judges of the Norfolk Circuit Court previously have inconsistently interpreted whether negligent supervision is an actionable claim under Virginia law. *Compare Lawrence v. Sentara Hosps.-Norfolk*, 90 Va. Cir. 232, 233 (Norfolk City 2015) (Hall, J.) (holding that negligent supervision is not actionable in Virginia), *with Hoover v. Epicurian*, 85 Va. Cir. 153, 154 (Norfolk City 2012) (Martin, J.); *Hernandez v. Lowe's Home Ctrs., Inc.*, 83 Va. Cir. 210, 219 (Norfolk City 2011) (Fulton, J.); and *Johnson-Kendrick v. Sears, Roebuck & Co.*, 39 Va. Cir. 314, 319 (Norfolk City 1996) (Morrison, J.) (holding that *Dowdy* stands for the proposition that a negligent supervision cause of action could exist under certain circumstances). As Judge Hall pointed out in *Lawrence*, however, the other cited Norfolk Circuit Court opinions were handed down prior to the Supreme Court's unpublished decision in *Shall. Lawrence*, 90 Va. Cir. at 234.

The Court, therefore, sustains CSB's demurrer as to the negligent monitoring and negligent supervision claims.

---

[1] This Court recognizes that unpublished Virginia Supreme Court opinions are, by definition, "[o]pinions not designated by the Court as having precedential value or as otherwise having significance for the law or legal system." *Virginia's Judicial System*, at http://www.courts.state.va.us/opinions/home.html (last visited June 27, 2016). This Court nevertheless finds the unpublished opinion to be a significant indicator of how the Supreme Court likely will rule in the future.

## Conclusion

For the above reasons, the Court sustains Hampton's plea in bar, sustains Newport News's plea of sovereign immunity, sustains the CSB's and Shah's plea of sovereign immunity, overrules the CSB's and Shah's demurrers as to the gross negligence causes of action, sustains the CSB's and Shah's demurrers as to the punitive damages claim, and sustains the CSB's demurrer as to the negligent supervision claim.

Cleaves-McClellan is granted leave to amend her Complaint within twenty-one days of the date of this opinion.