PRESENT: All the Justices

SAM MASSENBURG, ADMINISTRATOR
OF THE ESTATE OF COREY DEMETRIUS
MASSENBURG, DECEASED,

                                             OPINION BY
v. Record No. 190071                JUSTICE WILLIAM C. MIMS
                                        December 12, 2019

CITY OF PETERSBURG

FROM THE CIRCUIT COURT OF THE CITY OF PETERSBURG
Joseph M. Teefey, Jr., Judge

In this case, we consider whether a municipality is entitled to sovereign immunity for negligence claims arising from a defective fire hydrant.

I. BACKGROUND AND MATERIAL PROCEEDINGS BELOW

Corey Demetrius Massenburg died during a fire at his Petersburg residence. His father, Sam Massenburg, qualified as the administrator of his estate and in that capacity filed a wrongful-death action against the City of Petersburg. The complaint alleged that a fire began at Corey's residence while he was inside. Although firefighters arrived promptly, the closest fire hydrant "was effectively inoperable" because it "was not receiving an adequate or sufficient sustained flow of water." The complaint stated that the lack of water pressure was a systemic problem affecting the area in which the house was situated. It faulted the City for failing to notify area residents that the infrastructure was "not adequate or sufficient to provide the required safe flow of water to fire hydrants in the area." Firefighters had to resort to the next closest hydrant "some 1,000 feet away," and as a result, Corey "died from smoke inhalation and thermal injuries before firefighters could establish a sufficient water supply and remove him from the burning residence."

In response, the City filed a demurrer and plea in bar asserting that sovereign immunity barred Massenburg's suit. It contended that because Massenburg's claim arose from its

governmental functions of operating a fire department and supplying water for fire protection, the City was immune from Massenburg's suit. The trial court conducted a combined hearing on the plea in bar and demurrer. Because the City did not dispute the allegations in the complaint, the trial court declined Massenburg's request for a jury trial on the plea and instead decided the case on the pleadings. Ruling from the bench, the trial court observed that despite the "mix of factual allegations regarding maintenance of the water system," the ultimate harm alleged in the complaint was that the City failed to extinguish the fire in a timely manner, which made firefighting the municipal function at issue. Because responding to emergency calls for fires is an immune governmental function, the trial court concluded that sovereign immunity barred Massenburg's suit. It accordingly granted the City's demurrer and plea in bar and dismissed the complaint with prejudice.

We awarded Massenburg this appeal.

## II. ANALYSIS

Massenburg assigns error to the trial court's failure to hold a jury trial on the City's plea in bar and its ruling that sovereign immunity bars his complaint.

### A. Plea in Bar

"A plea in bar asserts a single issue, which, if proved, creates a bar to a plaintiff's recovery." *Hawthorne v. VanMarter*, 279 Va. 566, 577 (2010). The party asserting the plea in bar bears the burden of proof. *Id.* Two possible standards of review apply, depending on whether the plea's proponent elects to meet that burden by presenting evidence or relying on the pleadings. In the former situation, in which the "parties present evidence on the plea ore tenus, the circuit court's factual findings are accorded the weight of a jury finding and will not be disturbed on appeal unless they are plainly wrong or without evidentiary support." *Id.* In the

2

latter situation, "where no evidence is taken in support of a plea in bar, the trial court, and the appellate court upon review, consider solely the pleadings in resolving the issue presented. In doing so, the facts stated in the plaintiff's [complaint] are deemed true." *Lostrangio v. Laingford*, 261 Va. 495, 497 (2001). This approach results in functionally de novo review of the trial court's judgment.

Massenburg argues that the trial court erred in granting the plea in bar when it involved factual questions that a jury should have decided. This Court has held that the constitutional right to trial by jury, when properly invoked, applies to pleas in bar. *See Bethel Inv. Co. v. City of Hampton*, 272 Va. 765, 769–70 (2006). "If the facts underlying the plea in bar are contested, a party may demand that a jury decide the factual issues raised by the plea." *Hawthorne*, 279 Va. at 577. Unless the demand is limited to certain issues, "the party shall be deemed to have demanded trial by jury for all the issues so triable." Rule 3:21(c). "Conversely, if the facts are disputed and no demand for a jury is made, the 'whole matter of law and fact' may be decided by the court." *Hawthorne*, 279 Va. at 578 (quoting Code § 8.01-336(B)).

Massenburg demanded a jury trial in both his complaint and brief in opposition to the City's plea in bar. As the conditional language from *Hawthorne* indicates, however, a demanded jury trial is appropriate only "[i]f the facts underlying the plea in bar are contested." For purposes of its responsive pleadings, the City agreed with the facts as alleged in the complaint and sought to submit the case on the pleadings. Although Massenburg requested discovery and trial on various issues related to the ultimate immunity question, the City's decision not to contest the complaint's allegations for purposes of the plea in bar means that the facts are not disputed. *See Cooper Indus., Inc. v. Melendez*, 260 Va. 578, 582, 594–95 (2000) (approving trial court's decision to hear evidence and decide a plea in bar regarding applicability of a statute of

repose when the plaintiff objected "that the plea in bar involved disputed factual questions to be resolved by a jury"). The trial court therefore did not err in deciding the case on the pleadings despite Massenburg's jury demand. And because the trial court did not take evidence, its rulings present issues of law this Court reviews de novo. *See Assurance Data, Inc. v. Malyevac*, 286 Va. 137, 143 (2013); *Weichert Co. of Virginia, Inc. v. First Commercial Bank*, 246 Va. 108, 108 (1993) ("As no evidence was taken, we, like the trial court, rely solely on the pleadings in resolving the issue before us.").

B. Municipal Sovereign Immunity

The central issue in this appeal is whether sovereign immunity bars Massenburg's suit. Virginia has long recognized that local governments share in the Commonwealth's sovereign immunity. *See City of Richmond v. Long*, 58 Va. (17 Gratt.) 375, 379 (1867). Unlike counties, which share fully in the sovereign's immunity from tort, *Seabolt v. County of Albemarle*, 283 Va. 717, 719 (2012), whether a municipal corporation is entitled to sovereign immunity protection depends on the type of function it exercises when liability arises, *City of Chesapeake v. Cunningham*, 268 Va. 624, 634 (2004).

Under longstanding principles, sovereign immunity protects municipalities from tort liability arising from governmental functions, but not proprietary functions. *Id.*; *see Long*, 58 Va. (17 Gratt.) at 378–79. A municipality engages in a governmental function when it exercises powers and duties exclusively for the public welfare, effectively acting "as an agency of the state to enable it to better govern that portion of its people residing within its corporate limits." *Hoggard v. City of Richmond*, 172 Va. 145, 147 (1939). Proprietary functions, however, involve the municipality's exercise of its powers and privileges primarily for its own benefit. *City of Virginia Beach v. Carmichael Dev. Co.*, 259 Va. 493, 499 (2000); *Hoggard*, 172 Va. at 148. The

4

municipality lacks the protection of sovereign immunity for these ministerial activities even though "the general public may derive a common benefit" from their performance. *Hoggard*, 172 Va. at 148; *see Cunningham*, 268 Va. at 634.

In determining whether a municipality is engaged in a governmental or proprietary function, this Court has rejected a simple inquiry into whether private entities also perform the same service. *Edwards v. City of Portsmouth*, 237 Va. 167, 172 (1989). Instead, "the test applied by the Court . . . is 'whether, in providing such services, the governmental entity is exercising the powers and duties of government conferred by law for the general benefit and well-being of its citizens.'" *Carter v. Chesterfield Cty. Health Comm'n*, 259 Va. 588, 593 (2000) (quoting *Edwards*, 237 Va. at 172). If so, the function is governmental and the municipality is immune. If not, the function is proprietary and the municipality is potentially subject to liability. *Id.*

Our cases have previously classified certain municipal actions. For instance, and as relevant to the case at bar, operation of a fire department is a governmental function. *Hoggard*, 172 Va. at 154 (noting that cases have held that "municipalities are not liable for such acts and omissions in the exercise of the police power, or in the performance of such municipal faculties as . . . the operation of fire departments"). This is because firefighting falls within a municipality's power and duty to provide emergency services "for the general safety and welfare of the citizenry." *Gambrell v. City of Norfolk*, 267 Va. 353, 359 (2004). On the other hand, it is similarly well-settled that the routine operation and maintenance of a municipal water and sewer system is a proprietary function. *See Robertson v. W. Virginia Water Auth.*, 287 Va. 158, 161 (2014) (holding water authority not entitled to sovereign immunity for damages resulting from flow from a broken sewer pipe); *Woods v. Town of Marion*, 245 Va. 44, 47 (1993) (reversing

5

granted plea of sovereign immunity when complaint alleged negligent maintenance of waterworks caused water to leak from pipes, freeze on a road, and contribute to a collision).

This Court's decision in *City of Richmond v. Virginia Bonded Warehouse Corp.*, 148 Va. 60 (1927), which addressed a situation implicating both firefighting and water-supply functions, controls this case. There, the plaintiff company sought to install a fire-suppression sprinkler system in one of its warehouses. *Id.* at 66. To facilitate this process, the company requested that Richmond's water department close the valve controlling the warehouse's water supply. *Id.* at 67. The water department dispatched an employee to shut off the supply, but he negligently failed to close the correct valve. *Id.* at 68. As a result, water flooded the warehouse and damaged stored goods. *Id.* at 69. The company brought a negligence action against Richmond, which claimed immunity because its act "in furnishing water to the sprinkler should be classed as a governmental act in like manner as the acts of the fire department." *Id.* at 72.

This Court rejected Richmond's position. Even though the water's use for sprinklers implicated Richmond's firefighting function, the Court emphasized that the connection to that governmental function was too remote to trigger sovereign immunity. *Id.* at 71. We elaborated:

> The mere fact that a municipal corporation uses its water works system for the extinguishment of fires as well as for the distribution of water for domestic purposes, does not exonerate it from liability for an injury arising from negligence in the management of its water works *not directly connected with the extinguishment of fires*.

*Id.* (emphasis added). The installation of the sprinkler, it found, was for the warehouse company's private benefit rather than to aid Richmond in preventing or extinguishing fires. *Id.* at 74. Instead, Richmond had acted solely within its proprietary function of supplying water and therefore lacked sovereign immunity. *Id.*

6

This case presents the inverse of *Virginia Bonded Warehouse*. The sole negligence alleged in Massenburg's complaint is that the City's systemic negligent maintenance of its water system prevented a sufficient flow of water to the fire hydrant in front of the house, inhibiting the firefighters' response. Although this allegation is more "directly connected with the extinguishment of fires" than that in *Virginia Bonded Warehouse*, Massenburg's complaint alleged the systemic nature of the City's failure to maintain adequate water pressure, apparently in an effort to bring this case within the City's proprietary water-supply function. *Id.* at 71.

At oral argument, however, counsel for Massenburg declined to argue this position, conceding that he did not possess information that there was insufficient pressure generally or that the water supply was otherwise inhibited in a systemic manner. When asked whether a systemic lack of water pressure caused the harm, counsel argued that the cause was instead

> defective equipment that the City was supposed to take care of. I'm assuming the water pressure was fine. There's not a concern about a lack of supply of water. The fire department just couldn't get to it because the public works department didn't take care of the things they were supposed to take care of.

Upon the Court directing counsel's attention to the complaint's language alleging insufficient water supply, counsel stated that "the entire system was in disrepair, but there was not a shortage in the supply of water. There was a shortage because . . . nobody had taken care of the pipes, the mains, the valves for the fire hydrant." When asked whether he continued to take the position that there was insufficient systemic pressure, counsel responded regarding the inoperable condition of the single fire hydrant closest to Corey's house. In addition, the complaint's allegation that there was an operational fire hydrant 1,000 feet away calls into question the contention that the City's negligence was systemic. Massenburg's case thus turns on the narrow

7

question of whether the City can be liable for injuries resulting from its failure to maintain the operability of the fire hydrant in front of the house.

A fire hydrant, as the name suggests, exists to facilitate the firefighting function of the municipality that installed it. That function is quintessentially governmental. That fire hydrants can be put to other uses is inconsequential because the sole reason municipalities undertake the expense of installing fire hydrants is to promote their ability to respond to fire emergencies. The fire hydrant in this case is distinct from the sprinklers in *Virginia Bonded Warehouse*. Whereas the warehouse company installed the sprinkler system for its own private benefit and Richmond's only involvement was supplying water to that system, in this case the City—not a private owner—installed the fire hydrants, and it did so to provide "for the general safety and welfare of the citizenry." *Gambrell*, 267 Va. at 359. The City's provision and maintenance of fire hydrants is therefore an immune governmental function. *See Carter*, 259 Va. at 593. Moreover, to the extent that this governmental function coincides with the City's proprietary functions in Massenburg's surviving allegations, "'the governmental function is the overriding factor' and the doctrine of sovereign immunity will shield the locality from liability." *Carmichael Dev. Co.*, 259 Va. at 499 (quoting *Taylor v. City of Newport News*, 214 Va. 9, 10 (1973); *see Bialk v. City of Hampton*, 242 Va. 56, 58 (1991). Accordingly, the trial court did not err in granting the City's demurrer and plea in bar of sovereign immunity and dismissing Massenburg's complaint with prejudice.

## III. CONCLUSION

The trial court did not err in deciding the City's plea in bar on the pleadings because the City did not dispute the complaint's factual allegations. It also properly granted the City's demurrer and plea in bar of sovereign immunity because Massenburg's complaint alleged

negligence arising from the City's immune governmental function of providing and maintaining fire hydrants. Accordingly, we affirm the trial court's ruling dismissing Massenburg's complaint with prejudice.

*Affirmed.*